PETER M. MARK, Administrator, *vs.* ST. PAUL, MINNEAPOLIS & MANITOBA RAILWAY COMPANY.

June 12, 1884.

**Negligence—Evidence—Contributory Negligence—Question for Jury.**
Along and near a planing-mill, and within 20 feet of it, defendant laid a spur track for the purpose of loading and unloading lumber, etc., at the mill.   A shed extended from the mill proper to within four feet of the track.   There were several planers in the mill.   The lumber was fed into the mill on the side away from the track, and passed through the planers at right angles and towards the track, and within a few feet of it.   At each planer was employed a man who received the board as it came from it, carried it across the track to be piled up near the track convenient for shipment, and then returned for another board, the whole distance thus traversed being very short, and his employment requiring his crossing and recrossing the track constantly.   The land on which the lumber was piled belonged to the defendant.   The defendant knew of this mode of conducting the business, and this use of the land and track by the mill-owner was with its consent and permission, express or implied.   The planers made so much noise as to prevent a person from hearing an approaching car.   This spur track was not used for the general and regular business of the road, but only to set in such cars as were needed to be loaded or unloaded at the mill or factory, and these were not set in at regular times, but only as occasion required, at irregular intervals.   On the occasion of the accident, the deceased, one of the

men employed in carrying the lumber from the planer across the track, had carried a board across to a pile about four feet from it, and set it down and turned around to go back to the mill for another board, when he was struck by defendant's car, which was being "kicked" in at an unusual rate of speed, without any warning to deceased. If deceased had looked up the track, he could have seen the approaching car in time to have avoided the accident. *Held,* that under these facts the court could not say that the omission of the deceased to keep on the lookout for approaching cars was *per se* negligence. It was properly a question of fact for the jury to determine whether he ought to have kept on the lookout, or whether, under the circumstances, he might not rely on being given timely warning of the approach of cars.

**Practice—Struck Jury in Hennepin County.**—Chapter 45, Laws 1881, providing that in Hennepin county petit jurors shall be summoned to appear on the second Tuesday of each general term of the district court, does not amend or change the statute as to the time when a struck jury shall be drawn.

Appeal by defendant from an order of the district court for Hennepin county, refusing a new trial, after a trial before *Koon,* J., and a jury. A former appeal is reported, 30 Minn. 493.

*R. B. Galusha* and *Benton & Roberts,* for appellant.

*Arthur J. Shores,* for respondent.

MITCHELL, J.   This is an action by plaintiff, as administrator, for causing through negligence the death of Hemberg, his intestate. Hemberg was employed at a planing-mill at the corner of Fifth street and Second avenue, on the east side, in the city of Minneapolis. At the corner of this avenue and Fourth street was a furniture factory. Along and near the planing-mill and factory, and between them and the avenue, the defendant, for their accommodation in loading and unloading lumber and furniture, had laid a spur track. The planing-mill proper set back from the line of this spur track about 20 feet. A shed extended from the mill to within about four feet of the track. There were several planers in the mill. The lumber was fed into the mill on the side away from the track, and passed through the planers at right angles and towards the track, coming out within a few feet of it. The planed lumber, as it was taken from the planers, was piled on the opposite side of the track, and as close to it as it conveniently

could be, *for the purpose of loading it into cars.* The land across the track, upon which the lumber was thus piled, belonged to the defendant company. A man was employed at each planer to receive the boards as they came from it, carry them across the track, and pile them up. As each planer ran through about 30,000 feet a day, the act of crossing the track by these men in carrying this lumber was necessarily very frequent and constant, the whole distance traversed by them being very short. This seems to have been the usual mode of conducting the business, and had apparently obtained for a considerable time.

It does not appear that the owners of the planing-mill had obtained express authority to thus use the land and track of the company, but, under the circumstances, it is clear that they must have been fully aware of the fact of such use, and, it not appearing that they objected, it is to be assumed that it was with their permission and consent, and therefore that the owners of the planing-mill were in the lawful use of this land and track to the extent and for the purposes stated.

The planers made a great deal of noise, so that it would be difficult, if not impossible, to hear an approaching car. This spur track was not used for the general and regular business of the road, but simply to set in such cars as were to be loaded or unloaded at the mill or factory. These cars were not set in at any regular or stated times, but merely as occasion required, at irregular intervals, sometimes more and sometimes less frequently. The owner of the furniture factory testifies that the car-loads of furniture sent out would not at that time exceed one in a week or one in two weeks, and of lumber brought in would sometimes be two or three in a day, and sometimes not one for two or three weeks. The owner of the planing-mill testifies that cars came in to take lumber out every day; sometimes two or three times and sometimes once a day, and sometimes three or four or five times a day. There were two methods by which these cars were brought in: one by "pushing,"—that is, where the engine follows the car to its place; the other by "kicking,"—that is, by giving the car an impetus with an engine, and then uncoupling it and letting it run to its place with this impetus.

One of the men engaged in carrying the lumber from the planers across the track was the deceased. The pile to which he was carrying the boards, on the occasion of the accident, was about seven feet high, with the ends of the boards towards the track, and about four feet from it. The manner of doing the work was to take a board as it came from the planer, carry it across the track, put one end on the pile and the other end on the ground, and then turn around and go back to the mill for another board, while a man on the pile would draw up the first. From this it is evident that while engaged in the acts of putting down a board, and turning around to go back, deceased must have stood very near the side of the track. On this occasion a car was "kicked" in at an unusually rapid rate of speed, without any warning or means of warning to deceased or others, except that a brakeman on the top of the car hallooed when he saw Hemberg's danger, but which the latter evidently did not hear in time to escape, owing to the noise of the planers. The evidence tends to show that Hemberg had just carried a board across the track, set it down, and turned around to go for another, when he was struck and killed by this car coming from the direction of Fifth street. Either his back or right side was towards the car, and his face towards Fourth street. The car was almost on him before he saw or heard it. It was conceded by the plaintiff on the trial that if Hemberg, at the time the car entered Fifth street, had been looking in that direction, he could have seen the car, and could have gotten out of the way.

The principal question raised is whether, on such a state of facts, a verdict for plaintiff is justified by the evidence. It is not seriously controverted, and could not successfully be, but that the evidence justified the jury in finding that defendant was guilty of negligence. But it is insisted that, inasmuch as, had the deceased looked, he could have seen the approaching car in time to escape, therefore, in not looking, he was, as a matter of law, guilty of contributory negligence. It is claimed that this fact brings the case within the decisions of this court, holding that it is negligence for a traveller at a highway crossing to go upon the track without making use of his senses to discover and avoid danger. But it seems to us that the cases are not analogous. A person going upon a railroad track is

not necessarily bound to look or keep a lookout for approaching danger, irrespective of the circumstances under which, or the purpose for which, he is there. For example, to an employe lawfully upon the track, employed in labor, the company often owes a duty of active vigilance. So, a person having business with the company in loading or unloading freight on the track, has a right to rely upon the company's diligence to protect him. It is true, the deceased did not bear either of these relations to the company, yet it is worthy of notice that one of the objects in piling this lumber on defendant's land was convenience in loading it on their cars for shipment. But deceased was not a traveller at a highway crossing, nor a trespasser, nor, it seems to us, a mere *bare* licensee, and the rule applicable to either of these classes is not strictly applicable to him. The place of the accident was not a highway crossing, nor was this track used for the regular and ordinary running of trains by defendant. It was simply a spur on which cars were set at regular intervals, as occasion required, to be loaded or unloaded at the mill or factory. The deceased was in the constant and lawful use of this track in the prosecution of his work, it being with the consent and permission, express or implied, of the defendant.

The employment of the men who were carrying this lumber across the track was such that they might naturally be oblivious to the approach of cars. To look down the track for cars every time they crossed the track, perhaps as often as once every minute, would be almost physically impossible while their attention was being given to their work. There were no especial stated times to look. They might do so every minute for half a day or more, and no car approach. All this must be presumed to have been known to the company. The company never having objected to this, the owners of the mill and their employes must be deemed, at the time of this accident, to have been in the lawful use of this land for piling lumber, and of the track for the purpose of crossing and recrossing to and from it, this being the only means by which it could be reached. Having permitted such a use, it was incumbent on the defendant to exercise its rights, in view of such license, so as not to mislead the licensees. And the licensees had a right to have regard to this duty on the part of the

company in determining what measure of caution they themselves should adopt to guard against danger. Under the facts of the case, a court would not say that it was negligence *per se* for deceased not to keep a lookout for approaching cars. It was fairly a question of fact for the jury to say whether he ought to have done so, or whether, under the circumstances, he might not rely on being given timely warning of approaching danger. See *Kay* v. *Pa. R. Co.*, 65 Pa. St. 269.

We have examined the portions of the charge excepted to and find no error. It was entirely proper to leave it to the jury to say whether "kicking" in a car was negligence. The meaning of the expression and the *modus operandi* having been explained to them, they were just as competent to decide whether it was negligence as experts. We find nothing in the special findings of the jury inconsistent with the general verdict, or that necessarily indicates that they rendered their verdict under a misapprehension of the duties of the respective parties.

In *O'Brien* v. *City of Minneapolis*, 22 Minn. 378, we held that where a struck jury is demanded, it must be struck at least six days previous to the commencement of the term at which the case is to be tried, so that the *venire* can be issued in time to secure the attendance of the jurors on the first day of the term, and that proceedings instituted after the commencement of the term for the purpose of obtaining such a jury are unauthorized and ineffectual for that purpose.

The amendment to Gen. St. 1878, c. 71, § 4, (Laws 1881, c. 45, § 1,) providing that in Hennepin county the petit jurors shall be summoned to appear on the second Tuesday of each general term of the district court, does not change or amend the statute as to struck juries. This amendment may have removed, so far as that county is concerned, one of the reasons for requiring struck juries to be selected six days before the commencement of the term of court; but the statute requiring it still remains. The *venire* for the struck jury was therefore properly quashed.

Order affirmed.