## Chicago & Northwestern Ry. Co.

v.

## John Goebel, Adm'r, etc.

1. Negligence—Persons engaged in labor on track.—To persons who are lawfully upon the track engaged in labor, the railroad company owes a duty of active vigilance, and such persons have a right to become engrossed in their labor to such an extent that they may be oblivious to the approach of trains, relying as they may upon the performance of the duty imposed, by law, upon the railroad company with reference to them. *Held*, that in this case the railroad company was guilty of gross negligence in the management of its switching engine and that deceased, who was engaged in unloading coal from a car on the track, exercised ordinary care.

2. INSTRUCTIONS.—The instruction to the effect that the employes of the railroad company, when they saw the deceased on the car at the place he was injured, a short time before the accident, as a matter of law, had a right to presume that he was a reasonable being and would not remain in a position of danger, was properly refused.

APPEAL from the Circuit Court of Cook county ; the Hon. LORIN C. COLLINS, Judge, presiding. Opinion filed August 6, 1886.

This was an action to recover for the killing of John James Hart, who, at the time of the accident which caused his death, was a teamster engaged in unloading coal from one of appellant's cars, in the village of Evanston. It was usual to place cars which were to be unloaded at Evanston on a side track where teams were driven up close to the cars and the freight unloaded. The car on which deceased was working was standing on this side track when it was struck by other cars on the track which were set in motion by a loaded car which was "kicked" down against them from the switch connecting with the main track.

Evidence tended to show that switching was done at the station every day, empty cars being taken from the side track and loaded ones being shot or "kicked" in upon it for the purpose of being unloaded. It was usual for the crew of the freight train, by whom the switching was done, to bunch the cars on the side track when the switching for the day was finished, and those who were engaging in unloading cars were in the habit of commencing their work of unloading as soon as they saw that the cars on the side track were bunched together and the brakes set. On the day of the accident the cars on the side track were bunched together and the brakes set, and the freight engine returned to the train on the main track. After waiting some time, those who were engaged in unloading cars, the deceased among the number, went upon the cars and began their work, and after about twenty minutes a loaded car was shot down the side track with such force as to move the cars against which it butted the distance of two

and a half car lengths.   The sudden jerk threw deceased to the ground and under the moving cars, and he was run over and killed.   It was proved by the train hands that the bell on the engine was rung as it moved the loaded car from the main track and switched it down on the side track, and it was shown by the evidence that when the switching was finished, it was most generally, but not always, the habit of the train men not only to bunch the cars on the side track up together and set the brakes but also to couple the cars.   It further appeared that one of appellant's brakemen saw the deceased at work upon the car, from which he was thrown, a short time before the loaded car which caused the accident was " kicked " down upon the side track.

The verdict was for plaintiff for five thousand dollars, on which judgment was rendered, and the case is brought here by appeal.

Mr. B. C. COOK, for appellant.

Mr. FRANK R. GROVER, Mr. ROBERT N. FREEMAN and Mr. C. M. HARDY, for appellee.

MORAN, J.   It is contended by appellant's counsel, that the declaration is not sustained by the proof in regard to the particular negligence alleged to have caused the injury.   The second count of the declaration is, in substance, that deceased had been given to understand by the servants and employes of defendant, that the engine would not be run again at that time on the switch or side track, yet, that negligently and without any warning signal, the said servants of the defendant drove said engine against the cars which were on the side track, and on one of which Hart was employed, with great force, whereby said Hart was thrown from the car and injured, etc.   The evidence tended to sustain these allegations. There is no ground for saying that the proof varied from the declaration.   This case has no similarity to that of T. W. & W. Co. v. Jones, 76 Ill. 313, which is cited and relied on by counsel.   There the condition of the crossing had no relation

.to the accident. Here what was done by appellant's servants in giving deceased to understand that the locomotive would not be run onto the side track, governed his action in going to work on the car, and afterward running the engine and loaded car in on that track without warning or signal is the negligence complained of. Appellant further urges that the evidence does not show such negligence on the part of its servants, as to make it responsible for the death of Hart, and that it fails to show that Hart himself exercised ordinary care. The evidence tended to show that Hart, as well as the four or five other men who were at work unloading the cars on the side track, were accustomed to that work ; that they were in the habit of suspending work at the cars while switching was going on, and that when the cars were bunched up together, it was an indication that the switching was finished, and the men resumed their work on the cars. There is a substantial concurrence of testimony that the cars were thus bunched on the day of the accident, that the four or five men, deceased among the number, all supposed from what they saw that the switching was finished, and got into different cars and brought their teams close alongside and resumed their work. The servants of appellant in charge of the engine and the cars that were being switched, had knowledge of the usual method of leaving the cars when switching was finished, and knew what leaving them in such position indicated to the men who were unloading them. It is shown that some time elapsed between the bunching of the cars and the switching onto the side track of the car which caused the accident. One witness fixes it at thirty minutes. It appears that during this delay, a brakeman of appellants, the one who was giving the signals to the engineer in doing the switching that day, while on top of a car on the main track, saw Hart upon the coal car from which he was a short time afterward thrown ; that said brakeman gave the signal to the engineer by which the car being switched was propelled against those already on the side track ; that no warning whatever was given to notify deceased of the impending danger, save ringing of the bell on the engine as it passed from the main track onto the side

track, at a point some five hundred feet away from the car on which Hart was working. We can not say that upon these facts the jury were not justified in finding that deceased was in the exercise of ordinary care, and appellant's servants were guilty of such negligence as rendered the company liable.

It is argued by counsel that when the employes of the company saw Hart at the coal car, the switching not having been finished, they had a right to presume that he would not place himself in a position of danger, and that he would use sufficient precaution to avoid being injured, in analogy to the rule as stated in R. R. Co. v. Modglin, 85 Ill. 482.

We do not think the doctrine of that case can find appropriate application to the facts in this record. Hart was rightfully on the appellant's car, and was there under circumstances which might very readily suggest to the brakeman, Matthews, that he supposed that the switching was finished. Engaged in his work under that belief, he would not be likely to notice the movement of cars on the main track, and when a car being shoved by the engine, passed the switch and entered on the side track, his view was wholly obstructed by several box cars standing between him and the switch. The noise made by himself and others near him in shoveling coal, would be likely to prevent his hearing the ringing of a bell five hundred feet away, and the bell, if heard, would be likely to convey no warning that the engine was on the side track, as the point at which the engine was moving on the main track, and the switch and side track, were in the same general direction from him.

Under such circumstances, instead of relying on a presumption that he would get out of the way of the impending danger, it was the duty of the railway company to exercise great diligence to warn him against it. " The general rule is, that to persons who are lawfully upon the track, engaged in labor, the railroad company owes a duty of active vigilance, and such persons have a right to become engrossed in their labor to such an extent that they may be oblivious to the approach of trains, relying as they may upon the performance of the duty imposed by law upon the railroad company with reference to them. A person having business with the railroad company

in loading and unloading freight, has a right to occupy a position designated by the company's agent, hazardous though it may seem, relying upon the company's diligence to protect him in such position." Thompson on Negligence, 461, and cases cited; Mark v. St. Paul, M. & M. Ry. Co., 32 Minn. 208; Rolling Mill Co. v. Johnson, 114 Ill. 57.

It is alleged by appellant that the court below erred in instructing the jury. No instructions were given for plaintiff. Defendant submitted thirteen instructions to the court, ten of which were given as asked, two modified by the court and one refused. The instruction refused stated the doctrine contended for by counsel, that the employes of the company, when they saw the deceased on the car at the place he was injured, a short time before the accident, as a matter of law had a right to presume that he was a reasonable being and would not remain in a position of danger. The instruction was properly refused for reasons hereinbefore stated. The sixth instruction, as given, was as follows, the modification by the court being indicated by italics:

"The jury are instructed as a matter of law, that although a plaintiff who has been guilty of negligence can recover, if the jury believe from the evidence that the defendant has been guilty of negligence, which is gross in comparison with that of plaintiff, *which is slight*, yet you are further instructed as a matter of law, that before you can consider the degrees of negligence of which the various parties have been guilty, you must believe from all the evidence in the case, that the deceased was at the time of the accident in question, exercising ordinary care and prudence for his own safety, *and if* you believe from the evidence that the deceased was guilty of a want of ordinary care, then the plaintiff can not recover." It is urged that by the phrase, "which is slight," the court in effect told the jury that the negligence of the plaintiff was slight. We do not think it possible that the jury understood the court by such words to express any opinion as to the care or negligence of plaintiff. The phrase was inapt, and the court was probably led to its use by the similar phrase used by counsel in drawing the instruction,

but in view of the fact that in two of the other instructions given the stereotyped formula as to gross and slight negligence was laid before the jury, and that the jury were told in nearly every instruction that plaintiff could not recover unless deceased was, at the time of the accident, in the exercise of ordinary care, we feel safe in the conclusion that appellant was not injured by the use of the words complained of. As to the modification of the twelfth instruction, it is unnecessary to say more than that the instruction, as modified, is more favorable to appellant than as asked.

After a careful examination of the record, we find no error, and the judgment appealed from must be affirmed.

Judgment affirmed.