Cincinnati, Indianapolis, St. Louis and Chicago R'y Co. v. Long, Adm'r.

## No. 12,945.

# The Cincinnati, Indianapolis, St. Louis and Chicago Railway Company v. Long, Administrator.

Negligence.—*Railroad.*—*Presumption that Men will Act Reasonably.*—*Extraordinary Conditions.*—Persons in control of railroad trains have a right to presume that men of experience will act reasonably in all given contingencies. They are not bound to anticipate and provide against extraordinary, unusual and improbable conditions, which involve inattention on the part of others, and their duty to persons thus situate only begins when they have good reason to suppose that they are unconsciously in peril or disabled from avoiding it.

Same.—*Presumption that Men will Leave Track.*—A watchman or lookout on a train, moving slowly, with bell ringing, may presume, when he sees a man walking soberly on or near the track, that the latter has observed the train, if by the exercise of care he could have observed it, and, unless something indicates the contrary, that he will step aside so as to avoid injury.

Same.—*Tracks Used by Several Railroads.*—*Liability to Servants of Other Companies.*—The employees of a railroad company, whose track connects with union tracks belonging to a distinct corporation, which are used for switching and other local purposes by the several railroads centering in the city where they are laid, may assume that the servants of other companies, who are discharging duties upon the tracks and grounds of the union company, will observe a degree of care commensurate with the known perils of the situation and the duties required of them.

Same.—*Switchman.*—*Injury While Discharging Duty.*—*Care Required of.*—A railroad company using one of the union tracks is not liable for an injury to a switchman employed by another company, sustained by being struck by a slowly backing train, with bell ringing, while walking upon or near such track to reach a switch standard to be operated by him, where, by the exercise of the same degree of vigilance for his own safety as would be required of a traveller or other person rightfully at the same place, he could have avoided the injury.

Same.—*Backing Train.*—*City Ordinance Requiring Watchman on.*—*Failure to Give Warning.*—A city ordinance, requiring a watchman to be stationed on the rear end of trains running backward through the city, in order to avoid accidents, does not require the watchman to stop the train or sound a warning when he has reason to believe that the person in the way of the train can and does see it approaching, and is in a situation to avoid danger by the exercise of his own volition; and the failure of

the watchman to so act under such circumstances does not charge the company with negligence.

SAME.—*Absorbing Duty.*—*Contributory Negligence.*—In the absence of any special circumstances, an experienced switchman, who is proceeding with his customary duties between two tracks, where the observance of care will enable him to perform such duties in safety, can not be said to be so absorbed in his duty as to exempt him from the necessity of exercising care for his own safety, and his failure to do so constitutes contributory negligence.

From the Marion Superior Court.

*A. W. Hendricks, O. B. Hord, A. Baker* and *E. Daniels*, for appellant.

*H. N. Spaan* and *A. W. Wishard*, for appellee.

MITCHELL, J.—Long, as administrator of the estate of Charles Hampton, deceased, sued the appellant railway company to recover damages for wrongfully and negligently causing the death of the decedent.

The paragraph of the complaint to which the evidence seems to have been addressed charges, that the negligence consisted in the employees of the railway company backing a locomotive engine and certain cars under their control and management over and upon Hampton, without giving him warning of their approach, and in violation of sections 1 and 11 of an ordinance of the city of Indianapolis, the accident having occurred in that city.

These sections provided, in substance, that it should be the duty of every engineer, conductor, or other person engaged in running a locomotive engine, to ring the bell attached thereto whenever the same should be moving through the city; and that it should be unlawful to run any locomotive or train of cars backward in or through the city without stationing a watchman or other person on the rear end of the train, in order to avoid accidents.

The jury returned a general verdict for the plaintiff, assessing his damages at four thousand dollars. They also re-

turned answers to fifty-two special interrogatories. There was a judgment upon the verdict.

Various incidental questions are presented, but upon careful consideration it seems to us that the merits of the whole controversy are all involved in a single inquiry, and that is, can the verdict and judgment be maintained upon the undisputed facts as they are disclosed by the record?

We shall regard the special findings of the jury, together with the admitted facts, and such as are supported by reasonable and uncontradicted evidence, as embracing the established facts in the case.

Briefly stated, the facts thus established are as follows: On the 15th day of November, 1883, and for some time prior thereto, the plaintiff's intestate, an experienced switchman and brakeman, familiar with the locality and the movements of trains at the place where he was injured, was in the service of the Indianapolis and St. Louis Railway Company, attending a switching engine, which was used in transferring cars from one point to the other in the city of Indianapolis, on and over the tracks of the Union Railway Company. At the point where the injury occurred, and for some distance either way, the Union Railway Company had two tracks lying parallel with each other, running substantially east and west. There was an intervening space of seven feet and ten inches between the north rail of the south track and the south rail of the north track. In this space there was a switch standard, the center of which was three feet and eight inches from the north rail of the south track, and four feet and two inches from the south rail of the north track. This standard was designed for use in moving a switch for the purpose of switching cars on and off the north track. The tracks were of standard gauge, and box-cars, passing over them, extended over the rails from one foot eight inches to two feet two inches.

The appellant's track, and the tracks of other railways, connect with the Union tracks, which are used under certain

regulations by the several railway companies centering in the city for switching cars and other local purposes. At the time of the accident the Union tracks were being used by the appellant and the Indianapolis and St. Louis Railway, a train belonging to the latter company having backed from the east over the south track, passing over a switch to the north track, where it was standing, or slowly moving.

In the line of his duty the plaintiff's intestate had occasion to go to the switch standard above described in order to adjust the track for the movement of the train, with the operation of which he was connected. While he was occupied about the matter of attending to the switch, the appellant's servants were backing a train, consisting of an engine and three box-cars attached thereto, westwardly, in the direction of the switch standard, along the south track. They were proceeding at a rate of speed less than four miles an hour, with the bell ringing continuously, and a full complement of men at their proper places, one of the brakemen occupying a place as lookout on the rear car of the backing train. The train thus backing was in full view of the switch standard, at or near which the deceased was struck, for a distance of one hundred and forty-two feet, and the jury find that the deceased could have seen the approaching train if he had looked in that direction. The uncontradicted testimony of the brakeman who was on the rear end of the backing train was to the effect, that when the train came in sight of the standard he saw and recognized the deceased walking westwardly, toward the standard, and that he was at that time a car-length or more distant therefrom. Whether he was walking on the track or in the space between does not very clearly appear. When within eight or ten feet of the standard the deceased looked directly at the backing train, and the watchman on the rear car, believing that the deceased saw the train, gave him no special warning of its approach. It does not clearly appear whether the deceased had thrown, or was just about to throw or turn, the switch as the train

neared the standard, but while at or about the standard he was struck by the projecting side of the rear car and thrown upon the track and crushed by the wheels, so that death ensued shortly thereafter.

Keeping in view the well settled rule, applicable in all cases of this character, that the plaintiff assumes the burden of proving that the injury complained of resulted from the negligence of the defendant, without any concurring fault on the part of the person injured which contributed to produce the injurious consequences, we proceed to consider the questions presented by the foregoing facts.

On behalf of the appellee it is ingeniously argued that the case was made out within the recognized rules, because, it is said :

1. The appellant's employees were acting negligently and in violation of the spirit of the ordinance of the city of Indianapolis, heretofore referred to, in that the watchman, who, according to the requirement of the ordinance, was stationed on the rear end of the train in order to avoid accidents, neglected his duty, by failing to warn the deceased of the approaching train.

2. The appellee contends, notwithstanding the deceased might have seen the train at any time after it arrived within a distance of one hundred and forty-two feet from the place where he was injured, that he was occupied with duties which necessarily absorbed his entire attention, and that hence, in the absence of special warning from the watchman on the rear car, he was guilty of no contributory negligence in failing to look, and in not avoiding contact with the moving train.

It is a well settled and reasonable proposition that an employer, who places an employee in a perilous situation, and exacts of him duties which necessarily require his attention and absorb his mind, must exercise vigilance in protecting the employee from perils not directly arising from the work in hand.   Wood Master and Servant, section 368.

Although an employee assumes all the hazards reasonably incident to the service in which he engages, he has a right to rely on the fact, when placed in a situation of danger, where engrossing duties are required of him, that the employer will not, without proper warning, subject him to other perils unknown to the employee, and from which the work exacted necessarily distracts his attention. *Coombs* v. *New Bedford Cordage Co.*, 102 Mass. 572; *Atlas Engine Works* v. *Randall*, 100 Ind. 293 (50 Am. R. 798); *Haley* v. *Case*, 142 Mass. 316.

It may well be, therefore, where a person is rightfully on a railroad track in the discharge of duties which absorb his attention, that it would be regarded as negligence for those having the management of trains, and who are, or should be, aware of the presence of a person so situate, to permit engines or cars to be run upon him while so employed, without giving sufficient warning to enable the person thus engaged to escape the danger. Under such circumstances, those who have the control and management of trains have no right to assume that persons who are required to be attentively engaged upon the track, or under or about cars upon the track, will look out for moving trains, or apprehend danger in the absence of such customary signals, or other warning, as the circumstances require and as they are led to rely upon.

Thus, in *Goodfellow* v. *Boston, etc., R. R. Co.*, 106 Mass. 461, the plaintiff and others were employees of a contractor who was engaged in constructing a wall to support the railroad. While holding a rope attached to a derrick in actual use, a locomotive engine, without any bell rung or signal given, ran upon the plaintiff, who knew of, and relied upon, the custom of the company to ring the bell or sound the whistle whenever an engine approached men working upon the track. It was held that the railroad company was guilty of negligence, and that the facts should have been submitted to the jury for their determination, as to whether or not the plaintiff was guilty of contributory negligence. So, also, in

*Crowley* v. *Burlington, etc., R. W. Co.,* 65 Iowa, 658 (20 N. W. Rep. 467), an employee of the company was engaged in clearing a high bank of snow and ice from the track. He was struck by a train, run at an inordinate rate of speed and without signals, and in violation of an ordinance, and it was held that the employee had a right to suppose that his employer would exercise care to avoid injuring him by sending cars along the track at an unlawful rate of speed. See, also, *Quirk* v. *Holt,* 99 Mass. 164; *Ominger* v. *New York, etc., R. R. Co.,* 4 Hun, 159; *Mark* v. *St. Paul; etc., R. W. Co.,* 32 Minn. 208 (20 N. W. Rep. 131).

Where those having the control and management of trains become aware of the presence of a person on the track, and have reason to believe from his appearance or from the manner in which he is occupied that he is either unconscious of, or unable to avoid, the danger of contact with the cars, it becomes their duty to use every reasonable effort to stop the train and arouse the attention of the person on the track. Unless those controlling the train have reasonable assurance that a person who is seen at work on the track is aware of the approach of the train, and that he is in a condition to apprehend and avoid the danger, they are guilty of negligence if they fail to give warning and stop the train. *Indianapolis, etc., R. W. Co.* v. *Pitzer,* 109 Ind. 179, and cases cited.

Propositions kindred to those above stated are abundantly supported by the authorities, but the facts under consideration do not bring this case within any of the principles referred to.

The deceased was not placed in a perilous position by the appellant, nor by any one toward whom it sustained any relation of privity; nor did the nature of the work in which he was engaged necessarily require him to be absorbed in his duties upon the track over which the appellant's train was passing, nor do the facts disclosed make it appear that he was actually so engaged.

The most that can be said is, that, while engaged in the ordinary duties incident to the position of a switchman, the deceased was upon common ground, where the trains and servants of all railroads using the Union tracks had a right to be in their order.

His situation, as regards the appellant, was in no material respect different from that of a traveller at or upon a highway crossing.

The appellant owed the duty of operating its train in careful compliance with the city ordinance, and with a due regard for the safety of all those who were in the exercise of corresponding rights or duties upon the tracks and grounds of the Union Company, or of those who might be found on the company's tracks and grounds.

Its employees had the right to assume that the servants of other companies, who were in the discharge of duties upon the tracks and grounds of the Union Company, would observe a degree of care commensurate with the known perils of the situation and the duties required of them.

When the appellant had properly manned its train, and stationed a watchman on the rear car, its employees were justified in assuming, while backing at a rate of speed less than four miles an hour and ringing the bell continuously, that all persons who had arrived at years of discretion, and who were in a situation to see the train, and who were not so engaged as to render them oblivious to its approach, would avoid contact with the cars.

When the watchman on the rear car observed the deceased walking toward the switch standard, presumably upon the open space between the north and south tracks, he had a right to assume that the latter had observed that which he could have seen and heard if he had been giving ordinary attention to the situation, and that he would not thrust himself into a position where he would be certainly injured.

Persons in the control of railroad trains have a right to presume that men of experience will act reasonably in all

given contingencies. They are not bound to anticipate and provide against extraordinary, unusual and improbable conditions, which involve inattention on the part of others, and their duty to persons who are thus situate only begins when they have good reason to suppose that such persons are unconsciously in peril, or disabled from avoiding it. It is a presumption that a person of mature age, and in the possession of his faculties, will exercise care for his own safety, and that he will not go or remain in a perilous position, when a slight effort would carry him to a place of safety. Accordingly, a watchman or lookout on a train, moving slowly, with bell ringing, may presume, when he observes a man walking soberly on or near the track, that such person has observed the train, if by the exercise of care he could have observed it. He may, therefore, reasonably presume, unless something indicates the contrary, that the person on the track will step aside so as to avoid any injury. *Indianapolis, etc., R. R. Co.* v. *McClaren*, 62 Ind. 566; *Lake Shore, etc., R. R. Co.* v. *Miller*, 25 Mich. 274; *St. Louis, etc., R. R. Co.* v. *Manly*, 58 Ill. 300; Beach Cont. Neg. 394; *Terre Haute, etc., R. R. Co.* v. *Graham*, 95 Ind. 286 (48 Am. R. 719); *Telfer* v. *Northern R. R. Co.*, 30 N. J. 188.

Adding to the foregoing considerations the reasonable and uncontradicted testimony of the watchman, who testified that the deceased, when about ten feet from the switch standard, at which he was struck, looked directly at the approaching train, and there is absolutely no ground upon which it can be said the watchman was blameworthy.

True, the ordinance required that a watchman should be stationed on the rear end of each backing train, but this did not require that the watchman so stationed should stop the train or sound a trumpet whenever he saw some person of mature age who might possibly, by inattention, come in its way.

Especially is this so when the watchman knew that the person ahead could see the approaching train, and when he

## MAY TERM, 1887.    175

Cincinnati, Indianapolis, St. Louis and Chicago R'y Co. v. Long, Adm'r.

had every reason to believe that such person actually did see the train, and was in a situation to avoid danger by the exercise of his own volition. Precaution beyond the requirements of the ordinance was a duty only in case there was reasonable ground for apprehension.

Sometimes railroad companies are required to station flagmen at dangerous crossings. The duties of a flagman are in some respects analogous to those of a watchman, under the ordinance in question.

In *Pakalinsky* v. *New York, etc., R. R. Co.*, 82 N. Y. 424, speaking of the duties of a flagman, the court said : " The duty of a flagman is to notify travellers crossing the railroad of the approach of trains; and when a traveller knows of the approach of a train, and sees it approaching, as to him the flagman has no duty to perform."

Assuming that the unimpeached testimony of the watchman was true, and a diligent examination of the record fails to disclose any evidence or circumstance which authorizes us to disregard it, and there is nothing in the case which justifies an imputation of negligence against the company, or shows that it failed to observe the ordinance of the city, not only literally, but according to its spirit and purpose. *Randall* v. *Baltimore, etc., R. R. Co.*, 109 U. S. 478.

We do not assent to the view that an experienced switchman, acquainted with the perils attending the performance of his duty at a particular locality, is, because of the nature of his employment, exempt from the obligation of exercising the same degree of vigilance for his own safety, in respect to the trains of other railroad companies, as would be required of a traveller or other person rightfully at the same place.

The rule has become so familiar that a reference to the authorities is unnecessary, that a person who goes, or is about to go, upon a railroad track, even at a place where he has a right to be, must use the means reasonably available to him in order to avoid injury from moving trains. Persons who suffer injury while disregarding this rule are without remedy,

and those who had the opportunity of knowing the peril must be assumed to have had the knowledge which their opportunities afforded them.    *Pennsylvania R. R. Co.* v. *Henderson*, 43 Pa. St. 449 ; Patterson Railway Accident Law, 50.

It would be manifestly unreasonable to apply one rule to travellers and others lawfully on the tracks of the Union Railway Company, and a different rule to the employees of the several companies, when both are substantially surrounded by the same circumstances.

Of course, in case an employee, or any other person, is actually absorbed in duties upon the tracks which necessarily divert his attention and prevent him from observing what he might see under other circumstances, and that fact is known to the company charged with the default, a different question is presented.

" If a very high degree of care is required of strangers coming upon a railroad track, to avoid injury, as much, or more, should be demanded of one who is familiar with the place, and can not but know it is pregnant with danger. Neither can go recklessly upon the road, taking no proper precautions to avoid accidents."    *Chicago, etc., R. W. Co.* v. *Sweeney*, 52 Ill. 325.    *Cincinnati, etc., R. R. Co.* v. *Butler*, 103 Ind. 31 ; *Schofield* v. *Chicago, etc., R. W. Co.*, 114 U. S. 615 ; *Holland* v. *Chicago, etc., R. R. Co.*, 5 McCrary, 549.

How can it be said, in the absence of any special circumstances, that an experienced switchman, who was proceeding, so far as appears, with his usual and customary duties between two tracks, where the observance of care would have enabled him to perform those duties in safety, was absorbed in his duty to a greater extent than would be a person driving his team across a railway track?

It was not shown that there was anything peculiar about the switch, or that it was different from those in common use, or that there was any emergency calculated to divert the attention or create confusion in the mind of the deceased; nor did it appear that he was thrown off his guard by any

act or omission of the appellant. It does not appear but that the switch standard could have been safely approached upon the space between the tracks, nor that it could not have been efficiently operated standing within the space, clear of all danger from contact with cars on the adjacent track. To hold that the deceased was without fault would require us to assume that he was compelled, in the discharge of his duty, to go upon the track, or to occupy a position where a moving train would come in contact with his body, and that he might do this without taking precautions, readily available to him, for his own safety. We have been unable to discover any evidence from which it appears that a person operating the switch in question, exercising ordinary care, would necessarily be in danger of contact with the cars; nor can we assent to the proposition that a switchman may, under such circumstances, expose himself without looking, and yet be free from fault.

It is for those who enter into employments of a dangerous character, or who work at dangerous places, to exercise all that care and caution which the nature of the employment or the situation in which they are employed demands. *Tuttle* v. *Detroit, etc., R. R. Co.,* 122 U. S. 189 ; *Bresnahan* v. *Michigan Central R. R. Co.,* 8 Am. & Eng. R. R. Cases, 147 (49 Mich. 410).

As is said by a learned author, one thus employed "may not wait to be told, but must act affirmatively. * * He must not go blindly and heedlessly to his work, when there is danger." Beach Cont. Neg., section 138.

Our conclusion is that the facts do not make a case of negligence against the railroad company. Besides, the legitimate inference that the deceased could only have suffered injury from want of attention to the danger of the situation is not rebutted or explained in the evidence.

While it can not be said that the special findings are so clearly inconsistent with the general verdict as to justify a

judgment notwithstanding the general verdict, we are of opinion that the court erred in not sustaining the appellant's motion for a new trial on the ground that the evidence does not sustain the verdict.

These conclusions render it unnecessary that we should consider and decide some incidental questions which arise on the record.

Judgment reversed, with costs.

ELLIOTT, J.—I concur in the conclusion that there was no negligence on the part of the appellant, but dissent from the conclusion that the appellee's intestate was guilty of contributory negligence.

Filed Oct. 21, 1887.