# Chicago, Indianapolis and Louisville Railway Company v. Cobler, Administratrix.

[No. 21,209.  Filed April 1, 1909.  Rehearing denied June 11, 1909.]

1. APPEAL.—*Precipe.—Sufficiency.—Motion for New Trial.*—A precipe calling for the amended complaint filed on December 31, 1904, and of the entire record had thereon and on and subsequently to September 5, 1907, sufficiently calls for a complete transcript of all papers filed and proceedings had, between such dates, including the motion for a new trial which constituted a part of the record. p. 482.

2. APPEAL.—*Law of the Case.—Complaint.—Sufficiency.*—A paragraph of complaint held sufficient on a former appeal, must be held sufficient throughout the subsequent stages of the case. p. 483.

3. PLEADING.—*Complaint.—Railroads.—Violation of City Ordinance.—Proximate Cause.*—A complaint setting out a city ordinance requiring any person engaged in running a locomotive to ring the bell while the locomotive is in motion, and alleging that defendant railroad company's engineer, without notice and without ringing the bell, negligently ran his engine against a car thereby causing it to collide with another car, causing the death of plaintiff's decedent, sufficiently shows that the failure to give notice or to ring the bell was the proximate cause of the injury.  p. 483.

4. PLEADING.—*Complaint.—Railroads.—Violation of Rules and City Ordinances.*—A complaint alleging that defendant railroad company's engineer negligently violated the company's rules, and also a city ordinance, thereby causing the death of plaintiff's decedent, states a cause of action.  p. 484.

5. TRIAL.— *Directing Verdict.—Evidence.—Railroads.—Assumption of Risk.*—Where a complaint alleged that defendant railroad company's engineer in violation of a city ordinance requiring engineers to ring their bells while the engines are in motion, and in violation of the rules of the company requiring the bells to be rung when the engines are put in motion, negligently, without notice and without ringing the bell, ran his engine into a car while plaintiff's decedent was at the other end unhooking the safety chains and disconnecting the air, causing decedent's death, and one witness testified that the engine usually went "right ahead," that there was "hardly ever any stop," another, that they "always coupled the engine on first and then * * * uncoupled the hose.

Vol. 172—31

The engine was never stopped unless car inspectors or others were working about the car," another, that under decedent's directions "it was the practice to continue the movement of the engine right on up and make the coupling as on this occasion," another, that it was the custom to "couple on before the men went in to cut the hose," and there was evidence that decedent could have uncoupled the cars without getting his head between the platforms, that the bell was not rung, that decedent stepped from the moving engine and went forward to make the uncoupling, the Supreme Court can say as a matter of law that the company was guilty of no negligence proximately causing such death. p. 484.

From Marion Circuit Court (12,644); *Henry Clay Allen*, Judge.

Action by Eunice J. Cobler, as administratrix of the estate of Marshall F. Cobler, deceased, against the Chicago, Indianapolis and Louisville Railway Company. From a judgment for plaintiff, defendant appeals. *Reversed.*

*E. C. Field, H. R. Kurrie,* and *Taylor, Woods & Willson,* for appellant.

*George W. Galvin,* for appellee.

Montgomery, J.—Appellee, as administratrix, recovered a judgment for $6,500, on account of the death of Marshall F. Cobler through appellant's negligence while in its employ. Appellant has assigned errors upon the overruling of demurrers to each paragraph of the amended complaint, and the overruling of its motion for a new trial.

Appellee's counsel, in oral argument, suggested that appellant's precipe is not sufficient to bring up the record necessary to a consideration of the questions argued.

1. The precipe requested a transcript of the amended complaint filed December 31, 1904, and the entire record had thereon, and on and subsequently to September 5, 1907. The motion for a new trial and other papers embraced in the transcript are by statute made part of the record. This precipe, in effect, required the clerk to make a complete transcript of all papers and proceedings in the cause after the date specified. The transcript was made out

and certified in obedience to the requirements of the precipe, and appellee's objection thereto cannot be sustained.

The first paragraph of complaint was held sufficient on a former appeal of this cause. *Chicago, etc., R. Co.* v. *Cobler* (1907), 39 Ind. App. 506. No subsequent amend-
2. ment was made, and that holding is therefore conclusive. *Pittsburgh, etc., R. Co.* v. *Collins* (1907), 168 Ind. 467; *Currier* v. *Elliott* (1895), 141 Ind. 394; *Lillie* v. *Trentman* (1891), 130 Ind. 16.

The second paragraph was dismissed. The third paragraph, as amended, alleged the existence of an ordinance of the city of Indianapolis, which required the engineer,
3. or other person engaged in running any locomotive engine, to ring the bell attached thereto whenever such engine should be moving in or through the city, and averred that the persons in charge of one of appellant's engines negligently ran the same against a cut of cars standing in said city while the decedent was between two of such cars in the performance of his duties, without notice and without ringing the engine bell, in violation of the provisions of said ordinance. Accepting the averments of this paragraph as true, the act of moving the engine without ringing the bell was negligence *per se*, and the situation of the parties, described in detail, was such as to make it appear that if the bell had been rung the deceased could and probably would have heard it and avoided the accident. The averments are such as to warrant the charge that the failure to give notice of the movement of the engine by ringing the bell, or otherwise, was the proximate cause of the injury resulting in the death of appellee's decedent, and the demurrer on the ground of insufficient facts was correctly overruled. *Baltimore, etc., R. Co.* v. *Peterson* (1901), 156 Ind. 364; *Pittsburgh, etc., R. Co.* v. *Moore* (1899), 152 Ind. 345, 44 L. R. A. 638; *Cincinnati, etc., R. Co.* v. *Long* (1887), 112 Ind. 166.

The fourth paragraph of complaint, as amended, was founded upon certain rules of the company, which required

the ringing of the bell before starting a train, while 4. running through tunnels and over the streets of cities and towns, and enjoined special care upon engineers and firemen in connection with coupling and switching cars, and in keeping a lookout and giving notice of signals. This paragraph contained, further, all the general allegations of the third paragraph, and was sufficient to repel appellant's demurrer.

The motion for a new trial was predicated upon charges that the verdict is not sustained by sufficient evidence and is contrary to law, that the damages are excessive, and that the court erred in giving instructions, and in refusing to give instructions requested.

The causes of action alleged, and the verdict returned thereon, are wholly without support from the evidence. There is no conflict in the evidence, and we are not 5. called upon to determine the credibility of contradictory witnesses. It appears that the deceased was an experienced switchman, and was foreman or conductor of a switching crew consisting of an engineer, fireman, two switchmen and himself. It was a part of their work to handle certain passenger coaches daily. They went with the switch engine up into appellant's yards between 1 and 2 o'clock in the afternoon of the day of the accident, to perform this work. The engineer was at his post in the cab on the right, the fireman on the left, switchman Worley was on the right, Thompson on the left, and Cobler near Thompson, standing on the footboard in front of the engine. They desired to turn the combination car, which was second in the cut of coaches standing in the yards.

The theory of appellee's counsel, and manifestly the one adopted by the jury, was that when the engine approached near to the first car it stopped, and the deceased and Thompson went forward to unhook the safety chains and disconnect the air hose connecting the first and second cars; that the deceased stepped between the cars, and was stooping over

engaged at this work, and his position of peril was within view of the fireman; that the engine should have remained stationary until the deceased or Thompson signaled for it to come forward, and then it should have been moved only after ringing the bell to give warning; but that the engine was run forward without signal, and without warning by bell or otherwise, until it struck the forward end of the first car, drove this car against the next one, and thus caught Cobler's head between the platform sills and inflicted the fatal injury.

The four surviving witnesses testified to the facts attending the fatal accident.    This evidence shows without conflict that, as the engine was slowly approaching the cars, the deceased and Thompson stepped off the engine and went rapidly forward along the left side of the first car, and were concealed from the view of the engineer; that Worley stood on the footboard beckoning the engineer to proceed slowly, which he did continuously until Worley opened the knuckle, and the engine automatically coupled to the car.    The engine did not stop until the coupling was made.    In the meantime Cobler had gone to the farther end of the car to release the safety chains and air hose, stepped between the car platforms, which worked close together near the center, but were rounded off towards the outer corners, leaving sufficient space for a man's body between them; that just as the engine coupling was made Cobler bent forward, presumably to release the hose, and the air having leaked out while the car was standing, it moved back a sufficient space to take up the slack, caught his head between the platforms, and inflicted an injury from which he died within a few hours.

The negligence which must be shown in order to sustain the case was in starting the engine after it was stopped, without signal so to do, and without warning to Cobler, and in making the engine coupling before releasing the coupling at the other end of the car, contrary to the usual custom and

practice.    The witnesses testified upon these matters as follows:    Thompson said:    "We would just go right straight ahead up and couple onto the car.    There is hardly ever any stop.    When we went up there for that purpose, we would go right ahead.    We could cut them [the hose] when we got coupled on."    Worley said:    "It was our custom under Cobler;    *    *    *    always coupled the engine on first and then walked up and uncoupled the hose.    The engine was never stopped unless car inspectors or others were working about the car."    Engineer Olsen said:    "When we worked under Cobler, when we went up it was the practice to continue the movement of the engine right on up and make the coupling as on this occasion.    That is the way we always did."    Fireman Casey said:    "It was always our custom to get up and couple on, and they would get off and go down and cut the hose and safety chains; couple on before the men went in to cut the hose."    It appeared further that the chains and air hose could be safely released while the engine was coupling on, by stooping so that the head would come below the platforms, which were about four feet high; and Worley said he had often done this, and had seen Cobler do so frequently.    Thompson was within four or five feet of Cobler at the time of the accident, but no one knew that he was in a dangerous position prior to his injury.    The engineer was manifestly free from blame, since he was wholly unaware that the deceased was exposed to any danger, and ran the engine as usual, slowly and cautiously, in response to signals from Worley, making the coupling with only sufficient force to take up the slack between the cars.    The fireman was at his post watching for signals, but none was given to him.    He saw Cobler go between the cars, but was unable to see the position of his head, and did not know that he was in peril of any kind.    It was usual and customary to run the engine forward and make the coupling unless a signal to stop was given.    No stop signal was given because, as the witnesses stated, there was no occasion known for giving

City of New Albany *v.* New Albany St. R. Co.—172 Ind. 487.

such a signal. The engine bell was not rung after passing the last street crossing, but manifestly that fact did not form any element of the causes producing the accident. Cobler knew the engine was moving, and, unless signalled to stop by Cobler or Thompson, it would continue to move until the coupling was effected. If the ringing of the bell would have admonished him that the engine was advancing, it would only have advised him of a fact which he knew to be a daily occurrence.

The answers to special interrogatories indicate that the jury wholly disregarded the evidence, and made answers directly contrary to all the testimony, and without regard to truth. Courts cannot permit such verdicts to stand. Grievous as this misfortune is, redress therefor can be had only by showing a legal liability. If it be admitted that the bell should have been ringing, which we do not decide, the omission of such duty was not a proximate cause of the accident; and, apart from the failure to ring the bell, no blame can be justly charged against any one upon the engine. The verdict is unsupported by the evidence, and is contrary to law.

The judgment is reversed, with directions to sustain appellant's motion for a new trial.