ROYAL INDEMNITY INSURANCE COMPANY *v.* SHUE.

[No. 19,498. Filed May 31, 1962. Rehearing dismissed July 2, 1962. Transfer denied February 18, 1963.]

*James H. Pankow, Jones, Obenchain, Johnson, Ford & Pankow,* of South Bend, for appellant.

*Eugene H. Haviland,* and *James P. Gleason,* both of Michigan City, for appellee.

MYERS, J.—This is an appeal from a judgment entered on a jury verdict awarding damages to appellee based upon an "omnibus" clause in appellant's garage liability insurance policy issued to the Enyeart Chevrolet Corporation of Michigan City, Indiana, hereinafter called Enyeart.

It appears from the record that Enyeart was a dealer in new and used automobiles. It carried a garage liability policy issued by appellant which agreed to pay on behalf of Enyeart all sums which Enyeart might be legally obligated to pay as damages because of bodily injury, sickness or death, and destruction of property, caused by accident or arising out of certain defined hazards.

The "omnibus" clause reads as follows:

"III Definition of Insured
"With respect to the insurance under coverages A, B and D the unqualified word 'insured' includes the name insured and also includes (1) any partner, employee, director or stockholder thereof while acting within the scope of his duties as such, and any person or organization having a financial interest in the business of the named insured covered by this policy, and (2) any person while using an automobile covered by this policy, and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission."

Around the end of October, 1951, one Earl Pratt negotiated with an agent of Enyeart for the purchase of a used car. He was accompanied by his fiancee, one Ruby Nelson, who examined and inspected a 1951 Chevrolet which was on the used car lot maintained by Enyeart. She approved it and informed Pratt that it was the car she would like him to purchase and permit her to drive.

On the 7th day of November, 1951, Pratt signed a conditional sales contract with Enyeart for the purchase of the vehicle wherein he made cash-down payments totaling $565 and promised to pay the balance due of $1,030, plus finance charges and insurance premiums, in monthly installments of $70.55 until paid in full. Several days later, Associates Investment Company, a finance company, purchased this sales contract from Enyeart, paying it $1,030, the balance due. Pratt took possession of the car and drove it away at that time.

Previously, the vehicle had been owned jointly by a married couple. They were in the process of being divorced, and by reason thereof the receipt of the certificate of title by Enyeart was delayed. Appar-

ently, there was some question as to which one of the parties the court was going to award the car. Thus, when the installment sales contract was executed by Pratt, Enyeart could give him no certificate of title with which he could apply to the Indiana Bureau of Motor Vehicles for registration and license plates so as to be permitted to operate on the public highways of the state. To tide him over during this interim period, Enyeart permitted him to use its special license plates as a dealer. The certificate of title eventually was received by Enyeart, which tried to contact Pratt to give him the certificate and recover its license plates. Efforts to find him were unsuccessful.

On February 1, 1952, Ruby Nelson was driving the car with Enyeart's license plates on it. She became involved in a collision with a vehicle owned by appellee on U. S. Highway No. 421, about six miles south of Michigan City, Indiana. Appellee brought a civil action against both her and Pratt in the LaPorte Superior Court for damages as a result of personal injuries sustained in the accident. He recovered judgment against them in the sum of $1,500. Execution was issued on the judgment and returned whollly unsatisfied because of their insolvency.

For several weeks prior to February 1, 1952, Ruby Nelson had driven the automobile for her own pleasure and convenience and with the full knowledge and consent of Pratt. At all such times, the dealer's license plates were attached to it. Enyeart's general manager testified that while he had heard of Ruby Nelson, he did not know her personally, nor had he ever seen either her or Pratt drive the car.

It was stipulated that appellant had notice and knowledge of the pendency of the cause of action

against Ruby Nelson and Pratt by appellee, but did not employ counsel to defend the lawsuit.

This action was taken by appellee against appellant to enforce its claimed liability as insurer of Enyeart and thus to Pratt and Ruby Nelson under the terms of the "omnibus" clause. A trial before a jury resulted in a verdict in favor of appellee in the sum of $2,000. Thereafter, appellant filed a motion for judgment on answers to certain interrogatories which had been submitted to the jury. This motion was overruled. The court entered judgment on the verdict in the amount of $1,500, arbitrarily reducing the jury's finding by $500.

Appellant's motion for new trial was based upon grounds that the amount of recovery was too large, the verdict was not sustained by sufficient evidence and was contrary to law, that certain errors occurred at the trial involving the giving of certain instructions and the refusal to give certain tendered instructions and interrogatories, that the court erred in overruling appellant's motion for directed verdict at the close of all the evidence, and that the court erred in refusing to grant appellant's motion for judgment on the interrogatory answers of the jury. The motion for new trial was overruled and this appeal followed. The assignment of errors is based upon the overruling of the motion for new trial.

Appellant argues that there was undisputed evidence of a conditional sales agreement between Enyeart and Pratt; that the jury's answers to the interrogatories show that the total price of the automobile had been paid to Enyeart; that as a matter of law Ruby Nelson could not have been using the car at the time of the accident with the permission of

Enyeart so as to make appellant liable under the "omnibus" clause of the insurance policy

Appellee answers this argument, in effect, that since Pratt was unable to obtain his certificate of title, he could not register the vehicle in his name and obtain license plates; that without a certificate of title, and because he used Enyeart's license plates on the car, there was an incomplete sale so that Enyeart still was in a position to control the car and give consent and permission to its use; that the jury by its verdict found that Ruby Nelson was driving the car with the consent of Enyeart, and therefore, under the provisions of appellant's policy, it was subject to liability.

We cannot agree with appellee. Failure to strictly comply with title conveyancing statutes does not affect transfer of ownership of a motor vehicle. The certificate of title is not of itself proof of ownership or legal title to the vehicle. *Central Finance Co.* v. *Garber* (1951), 121 Ind. App. 27, 97 N. E. 2d 503.

> " . . . certificates of title or registration of automobiles are *indicia* of their ownership and control and, standing alone, raises an inference of legal title in the holder thereof, subject, of course, to contradiction of such fact under the ordinary rules of evidence." *Jones et al.* v. *Kilborn et al.* (1954), 125 Ind. App. 88, 92, 122 N. E. 2d 739, 741. See, also, *Automobile Underwriters* v. *Tite* (1949), 119 Ind. App. 251, 85 N. E. 2d 365.

Thus, the fact that a certificate of title had not been delivered to Pratt following the transaction with Enyeart is meaningless if there was in fact other probative evidence of a completed sale.

The retention of the license plates by Pratt likewise has no bearing on the case if a sale was consummated. The Indiana statutes expressly permit use of dealers' plates by a purchaser for a limited period of five days after the purchaser has taken possession. It is a misdemeanor for failure of the buyer to return them thereafter or failure of the dealer to use due diligence in procuring them. Section 47-2610, Burns' Ind. Stat., 1952 Repl. (Supp.). This section of the statute does not declare a sales agreement to be void for violation of its provisions, and, consequently, would not affect transfer of ownership of a motor vehicle.

However, the most important factor in this case is that the evidence clearly reveals without contradiction that there was a completed sale of the car in so far as Enyeart was concerned. The conditional sales contract called for a total cash price of $1,595 to be paid to Enyeart for the automobile. Pratt paid $565 of this amount and Associates Investment Company paid the balance due on behalf of Pratt. These facts were specifically found by the jury in its answers to interrogatories 1 to 4, inclusive, which read as follows:

"1. On or prior to October 29, 1951, did Earl Pratt pay to Enyeart Chevrolet, Inc. of Michigan City, Indiana, the sum of Five Hundred Forty-three and No/100 Dollars ($543.00) ?

"Answer: Yes.

"2. On or before November 14, 1951, did Earl Pratt pay to Enyeart Chevrolet, Inc., of Michigan City, Indiana, the sum of Twenty-two and No/100 Dollars ($22.00) in addition to the payment stated in Interrogatory No. 1?

"Answer: Yes.

"3. On or before November 9, 1951, did Associates Investment Company pay to Enyeart Chevrolet, Inc., of Michigan City, Indiana, the sum of

One Thousand Thirty and No/100 Dollars ($1,030.00) on behalf of Earl Pratt?
"Answer: Yes.

"4. Was the purchase price of the 1950 Chevrolet One Thousand Five Hundred Ninety-five and No/100 Dollars ($1595.00)?
"Answer: Yes."

The record reveals that Associates Investment Company purchased Pratt's contract from Enyeart, along with some others, on the 9th day of November, 1951. A conditional sales contract may be assigned by the seller, and where such assignment is absolute and unconditional, the assignee becomes the legal owner of the contract, acquiring all right, title and interest in the property described in the contract, together with any remedies to which the seller is entitled. 25 West's Indiana Law Encyclopedia, Sales of Personalty, Ch. 10, §218, p. 259; *Heyns* v. *Meyer* (1910), 46 Ind. App. 45, 91 N. E. 973.

All rights of ownership to the vehicle were acquired by Associates Investment Company when it paid the balance due and Enyeart transferred and delivered to it the writing which evidenced those rights. Thereafter payments from Pratt were to be made to Associates Investment Company, and in the event of default it had the right to exercise such remedies as repossession and obtaining a deficiency judgment. Pratt's debt to Enyeart was completely discharged and Enyeart had no further financial interest in the automobile. As a matter of law, Enyeart could not use the car, nor could it give its consent or permission to any one else to use it. Therefore, the "omnibus" clause in appellant's policy could not apply so as to subject appellant to liability under the facts of this case.

This would be so even though Associates Investment Company had not purchased the contract, since this court has held, as a matter of law, that a conditional vendee does not use an automobile with the "permission" of the conditional vendor within the meaning of the "omnibus" clause in a similar policy of liability insurance. *Farm Bureau Mut. Ins. Co.* v. *Emmons* (1952), 122 Ind. App. 440, 104 N. E. 2d 413. If Pratt was not operating the car with Enyeart's permission, then, certainly, Ruby Nelson was not so operating it at the time of the accident.

There is another reason which leads us to believe that this cause should be reversed. The remaining two interrogatories propounded to the jury, with the answers thereto, being interrogatories numbered 5 and 6, read as follows:

"5. On February 1, 1952, at the time of the collision between the automobile driven by Ruby Nelson and the Shue motor vehicle, was the Chevrolet driven by Ruby Nelson being driven in connection with the business of Enyeart Chevrolet, Inc., of Michigan City, Indiana, as an automobile dealer, repair shop, service station, storage garage, or public parking place, or an operation necessary or incidental to such operations?

"Answer: Yes.

"6. State the purpose for which the Chevrolet, driven by Ruby Nelson, was being operated by Ruby Nelson on February 1, 1952, immediately prior to the collision with the Shue motor vehicle.

"Answer: To help promote the sale of the car and future good will."

There is no evidence whatsoever in the record which supports the jury's answers to these questions. In fact, what evidence there was concerning the subject-matter is uncontradicted and quite to the contrary. The general manager of Enyeart testified that

between November 1, 1951, and February 1, 1952, there were no official transactions by Pratt with Enyeart. He further stated that he did not know Ruby Nelson personally and never saw her drive the automobile . Ruby Nelson's testimony was to the effect that the automobile was furnished to her by Pratt to drive and operate "for her own pleasure, business and convenience."

These facts so found by the jury seem more than incidental and nonessential in respect to the general verdict. We believe the rule is pertinent as expressed in *Showers Bros. Co.* v. *Davis* (1918), 68 Ind. App. 227, 232, 233, 118 N. E. 697, 698, 699:

> "In *Jenney Electric Mfg. Co.* v. *Flannery* (1913), 53 Ind. App. 397, 415, 98 N. E. 424, this Court, by Lairy, J., said:
>
> " ' . . . It has been said that in cases where the answers to interrogatories were such as to indicate that the jury wholly disregarded the testimony and made answers so manifestly ■ repugnant to each other as to indicate an intention to so distort the evidence as to make a case in favor of one party or the other regardless of the testimony, a new trial should be granted in the interest of justice. *Chicago, etc., R. Co.* v. *Kennington* (1890), 123 Ind. 409, 24 N. E. 137; *Chicago, etc., R. Co.* v. *Cobler* (1909), 172 Ind. 481, 87 N. E. 981; *South Shore Gas, etc., Co.* v. *Ambre* (1909), 44 Ind. App. 435, 87 N. E. 246.' "

The judgment in this case is contrary to law and is therefore reversed, with instructions to the trial court to sustain appellant's motion for directed verdict at the close of all the evidence and to enter judgment in favor of appellant.

Cooper, P. J., and Ax and Ryan, JJ., concur.

NOTE.—Reported in 182 N. E. 2d 796.