**CINCINNATI INSURANCE COMPANY,**
a Delaware Corporation, Plaintiff,

v.

**John MOEN, Mary Moen, Jeff Moen, William Holmes, Daniel Holmes, Karen S. Holmes, and Liberty Mutual Insurance Company, Defendants.**

**Civ. No. S 88–676.**

United States District Court,
N.D. Indiana,
South Bend Division.

Feb. 20, 1990.

Philip E. Kalamaros, South Bend, Ind., for plaintiff.

Anthony M. Zappia, Thomas D. Blackburn, South Bend, Ind., Mark A. Lienhoop, LaPorte, Ind., for defendants.

ALLEN SHARP, Chief Judge.

The plaintiff, Cincinnati Insurance Company on October 2, 1989 filed its Motion For Summary Judgment seeking determination that an accident that occurred on July 31, 1988 was not covered under policy held by the defendants, John, Mary and Jeff Moen. On November 29, 1989, the Moen defendants filed their Motion and Brief In Opposition of Plaintiff's Motion for Summary Judgment. On December 1, 1989, the Holmes defendants filed their Motion and Brief In Support of Defendants—Holmes' Motion For Summary Judgment And In Opposition To Plaintiff's Motion For Summary Judgment. On December 18, 1989, oral argument was heard. Finally, on January 16, 1990, A Supplemental Brief was filed by the Holmes defendants. This matter is now ripe for ruling.

## FACTS

Jeff Moen (Jeff) saw a 1957 Chevrolet Vin # VE575225022 which he was interested in buying. Mark Wallace was the owner of the car. John Moen, (John) Jeff's father, negotiated the deal with Wallace. The terms were a $300.00 down payment with a total purchase price of $2750.00. Jeff paid the $300.00 down payment. John obtained a personal loan for $2000.00 from a credit union. Jeff made up the difference of the $2750.00 purchase price and the $2000.00 with his own funds. John gave Jeff $2000.00 when they went to purchase the car on June 2, 1988. Jeff gave Wallace the money and left with a blank title. At no time was a name placed on the title or a new title obtained. A $500.00 sale price was listed on the title so as to not pay sales tax on the full $2750.00 price.

The car was driven from Wallace's property to the Moen home. The car was going to be gutted and then restored so that it would be a usable car. It was going to be Jeff's responsibility to pay for the car's upkeep and maintenance. Also, Jeff was to pay for his insurance.

From the date of purchase, the car was kept exclusively in the garage. Jeff and John were in the process of restoring the car to make it operational. On July 31, 1988, Jeff had almost completed the work on the car. Jeff and a friend, Daniel Holmes, took the car out for a drive. Unfortunately, Jeff was involved in an accident. The police report stated that the vehicle had no license plate and no insurance.

At the time of the accident, John had a homeowners/auto insurance policy number HR 622–20–14 with Cincinnati Insurance Company (Cincinnati). The policy period was from October 10, 1987 to October 10, 1988. The insurance policy was in effect at the time of the accident. The policy contained three vehicles on the declarations page. The 1957 Chevrolet was not included.

As a result of this accident an investigation was undertaken by Cincinnati. Cincinnati filed a declaratory action on November 16, 1988. On January 31, 1989, Daniel, William and Karen Holmes filed a complaint for damages in the St. Joseph Superior Court against the Moens.

## ISSUE

The main issue before this court is whether the Cincinnati Insurance Company policy provided liability coverage to the Moens when their son Jeff was involved in an accident while driving the 1957 Chevrolet. This issue can be resolved by deciding who is the owner of the 1957 Chevrolet.

## ARGUMENT

### I.

The jurisdictional basis here is diversity of citizenship under 28 U.S.C. § 1332. It is not disputed in this case that Indiana substantive law applies. Under the mandates

of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), it is the proper function of this United States District Court to follow the law of the relevant state, which is Indiana. Where the law is clear, it is not the proper function of this court to extend the same. Here the law is clear. This is not a case for this court to make an "Erie" educated guess as to what the law of Indiana might become. *See Sarratore v. Longview Van Corporation*, 666 F.Supp. 1257, 1263 (N.D. Ind.1987)

## II.

■ Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *accord Arkwright–Boston Mfg. Mutual Ins. Co. v. Wausau Paper Mills Co.*, 818 F.2d 591, 593 (7th Cir.1987). A material question of fact is a question which will be outcome-determinative of an issue in that case. *Big O Tire Dealers, Inc. v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir.1984).

Recently, the Supreme Court of the United States took the opportunity to address Rule 56. In two cases decided on the same day, the Court expanded the scope of the application of Rule 56. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *Celotex* addressed the initial burdens of the parties under Rule 56, and *Anderson* addressed the standards under which the record is to be analyzed within the structure of Rule 56.

■ After *Celotex*, it is clear that a non-moving party may not rest on its pleadings to avoid summary judgment. 477 U.S. at 325–26, 106 S.Ct. at 2553–54. *See also Catrett v. Johns–Manville Sales Corp.*, 826 F.2d 33 (D.C.Cir.1987), *cert. denied*, 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988). The initial burden is on the moving party to demonstrate " 'with or without supporting affidavits' " the ab-

sence of a genuine issue of material fact, and that judgment as a matter of law should be granted in the moving party's favor. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Rule 56). Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine [material] issue for trial.' " *Id.* Furthermore, in *Anderson*, the Court held that what facts are material in a specific case shall be determined by the substantive law controlling that case or issue. 477 U.S. at 248, 106 S.Ct. at 2510. In addition, the court went on to interpret Rule 56 as requiring that the courts analyze summary judgment motions utilizing the standard of proof relevant to that case or issue. *Id.* at 252–55, 106 S.Ct. at 2512–13. For recent academic insight into *Celotex* and *Anderson*, see Childress, *A New Era for Summary Judgments: Recent Shifts at the Supreme Court*, 116 F.R.D. 183, 194 (1987), where the author states:

> The recent Supreme Court cases likely require that summary judgment be more readily granted.... This emerging trend signals a new era for summary judgment, one in which the old presumptions are giving way to a policy of balancing and efficiency, and the mechanism is more appropriate to double as a sufficiency motion—allowing some sort of trial itself on the paper record.

For the judicial epilogue of *Celotex*, see *Catrett v. Johns–Manville Sales Corp., supra.* A recent object lesson applying these ideas is found in *Richardson v. Penfold*, 839 F.2d 392 (7th Cir.1988). *See also Jamison–Bey v. Thieret*, 867 F.2d 1046 (7th Cir.1989). For an exact and recent analysis on this subject, see Friedenthal, *Cases on Summary Judgment: Has There Been a Material Change in Standards?* 63 Notre Dame L.Rev. 770 (1988).

## III.

■ In Indiana, an insurance policy is a contract between parties and in determining the liability coverage of a policy, the law of contract applies. *Cincinnati Insur-*

*ance Co. v. Mallon* (1980), Ind.App., 409 N.E.2d 1100, 1103. Thus, the interpretation of an insurance policy is primarily a question of law for the court. *Eli Lilly and Co. v. Home Insurance Co.* (1985), Ind. 482 N.E.2d 467, *cert. denied,* 479 U.S. 1060, 107 S.Ct. 940, 93 L.Ed.2d 990. *See Meridian Mutual Insurance Co. v. Richie* (1989), Ind., 540 N.E.2d 27. Further, a court cannot rewrite an insurance contract. *Cincinnati Insurance,* 409 N.E.2d at 1103. If an insurance contract is clear and unambiguous, the language therein must be given its plain meaning. *Allstate Insurance Co. v. Boles,* (1985), Ind., 481 N.E.2d 1096; *Vernon Fire & Casualty Insurance Co. v. American Underwriters, Inc.* (1976), 171 Ind.App. 309, 356 N.E.2d 693. Only when ambiguities cannot be resolved within the four corners of the contract is a fact finder needed to determine those extrinsic facts upon which interpretation of the contract may rest. *Kordick v. Merchants Nat. Bank and Trust Co.* (1986), Ind.App., 496 N.E.2d 119. None of the parties in this argue that the policy is ambiguous. Thus, the court as a matter of law may decide this matter.

## IV.

## POLICY PROVISIONS

### DEFINITIONS

Throughout this policy, "you" and "your" refer to:

1. The "name insured" shown in the Declarations; and

2. The spouse if a resident of the same household.

The named insured on the declarations page is John D. Moen.

"Family member" means a person related to you by blood, marriage or adoption who is resident of your household. This includes a ward or foster child.

Also the definition of "Your covered auto" means:

1. Any vehicle shown in the Declarations.

2. Any of the following types of vehicles on the date you become the owner:

a. a private passenger auto; or

b. a pickup, panel truck or van.

This provision applies only if:

a. you acquire the vehicle during the policy period;

b. you ask us to insure it during the policy period or within 30 days after you become the owner; and

c. with respect to a pickup, panel truck or van, no other insurance policy provides coverage of that vehicle.

If the vehicle you acquire replaces one shown in the Declarations, it will have the same coverage as the vehicle it replaced. You must ask us to insure a replacement vehicle during the policy period within 30 days only if:

a. you wish to add or continue Coverage for Damage to Your Auto: or

b. it is a pickup, panel truck or van used in any business or occupation, other than farming or ranching.

If the vehicle you acquire is in addition to any shown in the Declarations, it will have the broadest coverage we now provide for any vehicle shown in the Declarations.

3. Any trailer you own.

4. Any auto or trailer you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

a. breakdown;

b. repair;

c. servicing.

d. loss; or

e. destruction.

The liability section states;

### LIABILITY COVERAGE

We will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability,

we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted.

"Covered person" as used in this Part means:

1. You or any family member for the ownership, maintenance or use of any auto (including a motorhome, truck, bus or motorcycle) or trailer.

2. Any person using your covered auto.

3. For your covered auto, any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

4. For any auto (including a motorhome, truck, bus or motorcycle) or trailer, other than your covered auto, any person or organization but only with respect to legal responsibility for acts or omissions of you or any family member for whom coverage is afforded under this Part. This provision applies only if the person or organization does not own or hire the auto or trailer.

EXCLUSIONS:

We do not provide Liability Coverage for the ownership, maintenance or use of:

1. Any motorized vehicle having less than four wheels (except for a motorcycle as owned, maintained or used by a covered person).

2. Any vehicle, other than your covered auto, which is:

a. owned by you; or

b. furnished or available for your regular use.

3. Any vehicle, other than your covered auto, which is:

a. owned by any family member; or

b. furnished or available for the regular use of any family member.

### V.

In looking at the policy provisions, it is clear that Jeff is a covered person under the liability section of the policy. Jeff was a family member who was using an auto.

The next step is to see if any of the exclusions apply.

The main issue revolves around who is the owner of the car. The Indiana Code Title 9 on Motor Vehicles defines owner. Indiana Code 9–1–1–2(o ) states:

"Owner" means a person who holds the legal title of a motor vehicle or any person renting or leasing a vehicle and having exclusive use thereof for a period longer than thirty (30) days, or in the event a vehicle is the subject of an agreement for the conditional sale or lease vested in the conditional vendee or lessee, or in the event the mortgagor thereof, with the right of purchase upon the performance of the conditions stated in the agreement and with an immediate right of possession of a vehicle is entitled to possession, then such conditional vendee or lessee or mortgagor shall be deemed to be the owner for the purpose of this article.

Under this definition, neither Jeff nor John is the owner of the vehicle because neither held legal title to the 1957 Chevrolet. At the time of the accident, the legal title of the motor vehicle was in no one's name, the title being signed off in blank. Thus, no one would be the owner of the car.

The court has found a case which it believes to be helpful when no one has proper title to a car. The case is *Jenkins v. Aetna Casualty and Surety Company*, 324 N.C. 394, 378 S.E.2d 773 (1989) This case has the same definition of liability and exclusions as the policy in question. This case also deals with an automobile undergoing restoration that was not listed on the declarations page of the insurance policy and was involved in an accident while being driven by a covered person.

In the *Jenkins* case, a car which was being restored was involved in an accident. The car was not on the declarations page because the owner did not have proper title. The car was purchased from a man known as "Junior". However, the car was not owned by "Junior". North Carolina's definition of the term "owner" is very similar to the Indiana definition. The Supreme Court of North Carolina held that under

the definition of owner, when no one has title to the car then the car does not have an owner. Using the same analysis in this case, since neither Jeff nor John has title to the 1957 Chevrolet neither one of them is the owner. Thus, the exclusion for any car owned by you or owned by any family member does not apply.

The *Jenkins* case also address the exclusion of a vehicle furnished or available for the regular use. The court held that a car that was in the process of being restored was not a vehicle that was for regular use. This court finds that the 1957 Chevrolet was not a vehicle for regular use.

There has been an argument raised that since John is a lien holder that he is an owner. A person does not qualify to be an owner by virtue of a lien. In *National Bank & Trust Company of South Bend v. U.S.*, 589 F.2d 1298 (7th Cir.1978), the court spoke to the issue of a lien holder in connection with the definition of owner under IC 9–1–1–2(*o*). The court said that the Indiana statutes define the owner of a motor vehicle as a person who holds the legal title and that an interest of a bank is that of the holder/owner of the lien. *National Bank & Trust Company of South Bend v. U.S.*, 589 F.2d at 1302. Thus it can be concluded that this car under the statute did not belong to John. John may be considered a lien holder, but under this statute it does not make him an owner.

In conclusion, Jeff is a covered person under the policy. He was a family member using an auto when the accident occurred. To negate coverage under the policy the court must find an exclusion to the policy which is applicable. Under the exclusion section of the policy, Cincinnati will not provide coverage for a vehicle which is owned by an insured or family member and is not a covered vehicle. Under IC 9–1–1–2(*o*) neither Jeff nor John own the 1957 Chevrolet. Since neither Jeff nor John own the car, there is no exception to the policy. Thus, Jeff is a covered person under the policy and there is coverage under the policy for the accident. Therefore, Cin-cinnati's Motion for Summary Judgment must be DENIED. IT IS SO ORDERED.