Kaleel M. ELLIS d/b/a Honey Creek
Motors, Appellant (Defendant),

Bobby Joe Lawrence, Terry Wayne
Fry, Defendants,

v.

David E. WEGER, Appellee (Plaintiff).

No. 61A04–8905–CV–00189.

Court of Appeals of Indiana,
Fourth District.

March 8, 1990.

Gus Sacopulos, David R. Bolk, Sacopulos, Johnson & Hahn, Terre Haute, for appellant, defendant.

Keith L. Johnson, Mann, Chaney, Johnson, Goodwin & Williams, Terre Haute, for appellee, plaintiff.

MILLER, Judge.

Defendant-appellant Kaleel M. Ellis d/b/a Honey Creek Motors (Dealer) brings this interlocutory appeal from denial of its motion for summary judgment. On June 10, 1988 Dealer sold a vehicle to Bobby Joe Lawrence. Approximately six hours later, Lawrence was involved in an automobile accident while driving the vehicle. A passenger in Lawrence's car—plaintiff-appellee David E. Weger—was injured in the collision. On August 9, 1988, Weger filed a negligence action against Lawrence and Dealer[1], seeking damages for his injuries. Dealer filed a motion for summary judgment claiming it had no liability for Weger's injuries. The trial court denied this motion and Dealer appeals, presenting three issues for review, they are:

I. Whether Dealer, in the absence of any evidence establishing an agency relationship, incurred liability when it sold a car to Lawrence and six hours later Lawrence, while operating the vehicle, was involved in a collision injuring Weger, and

---

1. Weger also filed suit against Terry Wayne Fry, the driver of the other vehicle involved in the collision.

II. Whether the Financial Responsibility Act, IND.CODE § 9–1–4–3.5, imposes liability upon a Dealer for Weger's injuries as a matter of law.

III. Whether Indiana's primary coverage statute, I.C. § 27–8–9–6 *et seq.* requires Dealer to bear the ultimate financial responsibility for Weger's injuries.

## FACTS

The only evidence presented at the summary judgment hearing was Lawrence's deposition. The facts established in this deposition are as follows: On Friday, June 10, 1988 at approximately 5:00 p.m. Lawrence, along with his wife and children, drove to Dealer's place of business to purchase a vehicle. After test driving two or three cars, Lawrence purchased a 1977 Cordoba. Lawrence signed a sales contract, traded in his 1970 Dodge Dart as a down payment and agreed to pay Dealer $50.00 every two weeks until a balance of $900.00 was paid. It is undisputed that Lawrence left the certificate of title with Dealer when he left the lot. Lawrence testified he was to return to Dealer's place of business, take the certificate of title to the license branch and have the title transferred to his name. The title would then be sent to the Department of Motor Vehicles to have the lien recorded and then returned to Dealer. Dealer, as lienholder, would retain the title until the balance was paid. Lawrence testified he had previously purchased vehicles from Dealer in a similar manner. Before leaving Dealer's place of business, Lawrence took his old license plate off his Dodge Dart and placed it in the trunk of the Cordoba. Lawrence testified that he did not transfer his old plate to the Cordoba because he had "dropped the insurance on the Dart". (R. 64). Before he left Dealers place of business, Lawrence requested that Dealer provide him with an interim registration plate [2] and Dealer complied. Lawrence testified he wanted to use this interim plate until he could purchase license plates and insurance for the Cordoba. Lawrence left Dealer's place of business at approximately 6:00 p.m. After leaving with the Cordoba, Lawrence consumed alcoholic beverages during the evening. Lawrence had not consumed any alcoholic beverages prior to arriving at Dealer's place of business. At approximately 12:30 a.m. on June 11, 1988, Lawrence, while driving the Cordoba, was involved in an automobile collision with another vehicle driven by Terry Fry. Weger —Lawrence's brother-in-law and a passenger in Lawrence's car—was injured in this collision. A blood test performed on Lawrence at the hospital after the accident revealed a blood alcohol content of .23%.

On August 9, 1988, Weger filed a negligence action against Lawrence, Fry and Dealer. In his complaint, Weger alleged Dealer was "title owner of the vehicle that Lawrence was driving and was being operated under Honey Creek Motor's dealer plate". (R. 2). Dealer filed an answer denying the material allegations of the complaint. On February 27, 1989 Dealer filed a motion for summary judgment claiming it was not liable for Weger's injuries as a matter of law because (1) Dealer was the "title holder" not the title owner at the time of the accident, and (2) liability cannot be imputed to Dealer merely because it furnished Lawrence with an interim license plate. Weger filed a brief in opposition claiming (1) there was a question of fact as to whether Lawrence was an agent of Dealer at the time of the accident, and (2) Dealer was liable for Weger's injuries because it allowed Lawrence to operate the Cordoba without liability insurance. After a hearing on April 11, 1989, the trial court took the matter under advisement. On April 19, 1989, the trial court denied

---

**2.** IND.CODE § 9–10–2–10 provides in pertinent part:

(c) Whenever any dealer or manufacturer sells a motor vehicle, he may provide the buyer with an interim registration plate. The dealer shall, in the manner provided by the commissioner, affix on that plate in numerals and letters at least three (3) inches high, the date on which the motor vehicle was delivered to the buyer.

(d) An interim registration plate authorizes a motor vehicle owner to operate that vehicle for a maximum period of twenty-one (21) days after the date of delivery of that vehicle to its owner or until regular registration plates are issued, whichever occurs first.

Dealer's motion and on May 11, 1989 the court certified its order for an interlocutory appeal.

## DECISION

In reviewing the denial of a summary judgment motion this court applies the same standard as the trial court. *Shearer v. Pla–Boy* (1989), Ind.App., 538 N.E.2d 247; *Robinson v. Kinnick* (1989) Ind.App., 548 N.E.2d 1167. Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits and testimony, if any, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Robinson, supra;* Ind.Trial Rule 56(C). The party seeking summary judgment has the burden of proving there are no material issues of fact, *Wingett v. Teledyne Industries, Inc.* (1985), Ind., 479 N.E.2d 51. In determining whether a genuine issue of material fact exists, all materials are construed liberally in favor of the nonmovant. *Robinson, supra; Brenneman Mechanical and Electrical, Inc. v. First National Bank of Logansport* (1986), Ind.App., 495 N.E.2d 233, *trans. denied.* However, if the movant establishes no genuine factual issue exists, the nonmovant may not rest on the mere allegations or denials of his pleadings, but must set forth specific facts showing there is a genuine issue for trial. *Hinkle v. Niehaus Lumber Co.* (1988), Ind., 525 N.E.2d 1243.

## ISSUE I

■ On appeal, Dealer claims the transaction between it and Lawrence was a conditional sale and, pursuant to I.C. § 9–4–1–11(d), Lawrence owned the vehicle at the time of the accident. This statute provides:

> (d) Owner. A person who holds the legal title of a vehicle, or *in the event a vehicle is the subject of an agreement for the conditional sale* or lease thereof with the right of purchase upon perform-

ance of the conditions stated in the agreement and *with an immediate right of possession vested in the conditional vendee* or lessee, or in the event a mortgagor of a vehicle is entitled to possession, then such conditional vendee or lessee or mortgagor *shall be deemed the owner for the purpose of this chapter.*

(emphasis supplied). Since the sales transaction had been completed and Lawrence owned the vehicle, Dealer asserts it is not liable for Weger's injuries. Additionally, Dealer notes its actions in (1) providing Lawrence with an interim license plate after the sale and (2) retaining possession of the certificate of title did not affect the transfer of ownership to Lawrence, citing *Royal Indemnity Insurance Company v. Shue* (1962), 134 Ind.App. 322, 182 N.E.2d 796.

In *Royal Indemnity*, a buyer signed a conditional sales contract with a dealer for the purchase of a used car. Buyer made a cash down payment of $565.00 and promised to pay monthly installments of $70.55 until the balance of $1,030.00 was paid in full. Dealer did not provide buyer with a certificate of title after the sale because Dealer had not yet received the title from the previous owners. To tide buyer over during this interim period, dealer allowed buyer to use one of its dealer license plates.[3] When dealer received the certificate of title it tried to contact buyer to give him the certificate and recover its license plate, however, efforts to find buyer were unsuccessful. Approximately three (3) months after the sale, buyer's fiancee, while driving the vehicle, was involved in a collision injuring the plaintiff. The plaintiff brought suit against dealer's insurance company seeking to recover damages for his injuries. The plaintiff claimed that because dealer's license plates were on the vehicle and dealer possessed the certificate of title, dealer still owned the car and buyer's fiancee was a permissive user within the meaning of the insurance company's policy. After a trial, the jury returned a

---

**3.** At the time of *Royal Indemnity,* the relevant statute allowed a buyer to use a dealer plate for five (5) days after the buyer took possession of the vehicle. There was no provision for an interim license plate under the old statute.

verdict in favor of the plaintiff and the insurance company appealed. On appeal, this court reversed and directed the trial court to enter judgment in favor of the insurance company, holding that dealer's failure to provide buyer with a certificate of title after the sale did not affect the transfer of ownership to buyer because "there was in fact other probative evidence of a completed sale". *Id.* at 799, 182 N.E.2d 796. Similarly, the court held buyer's retention of dealer's license plate did not affect the transfer of ownership. Although the relevant statute was violated because buyer used dealer's plate after the five (5) day period, the court noted the statute "does not declare a sales agreement to be void for violation of its provisions, and, consequently, would not affect transfer of ownership of a motor vehicle." *Id.* Relying on the holding of *Royal Indemnity*, Dealer asserts it is not liable for Weger's injuries as a matter of law and the trial court erred in denying its motion for summary judgment.

On the other hand, Weger argues the trial court correctly denied summary judgment because there is a question of fact as to whether Dealer owned the vehicle at the time of the accident. Weger argues that if a conditional sales contract was completed on June 10, 1988, Dealer should have presented this document as an exhibit at the summary judgment hearing. Without this document, Weger claims there is an inference that the sales transaction was not complete when Lawrence left Dealer's place of business. Weger notes Dealer's possession of the title is *prima facie* evidence of ownership, pursuant to IND. CODE § 34-3-19-3 [4]. Finally, Weger notes there is a question of fact as to whether an agency relationship existed between Lawrence and Dealer at the time of the accident, citing *Jack Ward Chevrolet, Inc. v. Mikel* (1988), Ind.App., 525 N.E.2d 349.

In *Jack Ward*, accident victims brought an action against an automobile dealership to recover for injuries sustained in an accident involving a car the dealership had sold. The facts of *Jack Ward* reveal that buyer went to a dealership to finalize the purchase of a car. Buyer signed several documents and then discussed the need for insurance with a salesman. Buyer informed the salesman she planned to purchase insurance that day. The salesman and buyer agreed buyer would drive the car to the insurance company's office, purchase insurance and then return to the dealership to complete the sales transaction. The salesman placed a dealer license plate, registered to the dealership, on the car and informed buyer she would be insured by the dealer's insurance policy. En route to the insurance company, buyer disregarded a yield sign and drove into the path of the plaintiffs' motorcycle. The plaintiffs filed suit against buyer and the dealership for personal injuries suffered as a result of the collision. After a trial, the jury returned a verdict in favor of the plaintiffs. The jury, in effect, determined that buyer was an agent of the dealership and as such, her negligence was imputed to the dealership. Dealer appealed and this court affirmed finding there was sufficient evidence to support the jury's finding of agency. The court noted dealer owned the vehicle at the time of the accident because *the purchase had not been completed.* Additionally, the salesman instructed buyer to drive the car to the insurance company, purchase insurance and return to the dealership so the transaction could be completed. The court noted buyer's actions clearly benefited the dealer as the purchase of insurance was a substantial step in the completion of the sale. Relying on *Jack Ward*, Weger claims there is a question of fact as to whether Lawrence was Dealer's agent at the time of the accident. As evidence of the agency relationship, Weger notes Lawrence was operating the Cordoba

---

**4.** I.C. § 34-3-19-3 provides:

34-3-19-3. *Proof of ownership.* In a civil proceeding, a certified copy of a certificate of title is prima facie evidence of the ownership of a motor vehicle.

However, this is merely an evidentiary rule and as noted, I.C. § 9-4-1-11(d) deems Lawrence—the conditional vendee—the owner of the vehicle.

with an interim registration plate and Dealer retrieved the wrecked Cordoba from a repair shop after the accident.

Here, in light of the undisputed facts, we find the trial court erred in failing to grant Dealer's motion for summary judgment. As noted in *Royal Indemnity*, a dealer's failure to provide a buyer with the certificate of title immediately after the sale does not affect the transfer of ownership to the buyer if there is other probative evidence the sale has been completed.[5] Here, Dealer presented evidence—via Lawrence's deposition—that Lawrence signed a sales contract, traded in his Dodge Dart as a down payment and agreed to make bi-monthly payments of $50.00 until the balance of $900.00 was paid in full. Lawrence testified he believed he owned the Cordoba when he left Dealer's place of business. Since Dealer presented evidence the sales transaction was completed on June 10, 1988, Lawrence, as a conditional buyer, owned the vehicle at the time of the accident. *See* I.C. § 9-4-1-11(d), *supra*. Weger offered no evidence at the summary judgment proceeding that Dealer owned the vehicle, other than the fact that Dealer retained possession of the certificate of title. However, it has been held that the seller will not be liable for injuries to third parties where beneficial ownership and possession were transferred to the vendee prior to the accident, even though legal title was retained by the seller. *See Herman v. Anacostia Chrysler-Plymouth, Inc.* (1965), 350 F.2d 781; Blashfield, *supra*.[6]

Finally, we find the facts of *Jack Ward* distinguishable.

In *Jack Ward*, buyer was acting for the benefit of and under the direction of the dealer at the time of the accident. The salesman directed the prospective buyer to drive the vehicle to the insurance company, purchase insurance and return to dealer's place of business to complete the sales transaction. This court noted that, at the time of the accident, the dealer owned the vehicle. In the case before us, the sales transaction had been completed and Lawrence owned the vehicle at the time of the accident. Lawrence's deposition established he was not an agent of Dealer. Lawrence testified he was not an employee of Dealer at the time of purchase and had never been employed by Dealer. Further, Lawrence testified that he did not see or speak to anyone from Dealer's place of business during the night of June 10, 1988 or the early morning hours of June 11, 1988. No plausible argument can be made that Lawrence was acting for the benefit of or under the direction of Dealer at the time of the accident.

Additionally, Weger's claim that Lawrence was an agent of Dealer at the time of the accident because Dealer retrieved the wrecked Cordoba from a repair shop after the accident is an incorrect statement of the facts. Lawrence's deposition clearly establishes that Dealer was acting as Lawrence's agent, not vice versa, when it retrieved the car from the repair shop. Lawrence testified that after the accident he telephoned Dealer and asked one of Deal-

5. We note generally, in the case of a conditional sale of an automobile, the seller is relieved of liability as owner for the negligent operation of the vehicle by another after consummation of the sale. 6 Blashfield Automobile Law and Practice, § 254.17 (1966).

6. Even if Dealer owned the vehicle, we note Weger still has not presented a sufficient factual basis to support a recovery against Dealer. As noted in *Kahn v. Cundiff* (1989), Ind.App., 533 N.E.2d 164, *adopted*, (1989), Ind., 543 N.E.2d 627, to impose liability upon an automobile owner for the acts of the driver the plaintiff must show either negligent entrustment or some type of principal/agent or master/servant relationship. The court stated:

To establish a negligent entrustment claim against an owner of a vehicle a plaintiff must

have facts showing that the owner entrusted the vehicle to a driver with knowledge that the driver was incompetent to drive the vehicle. *Stocker v. Cataldi* (1986), Ind.App., 489 N.E.2d 144, 145, *trans. denied*. To establish a vicarious liability claim against an owner of a vehicle the plaintiff must at the very least show some type of a principal/agent or master/servant relationship. *Wimp v. Anthis* (1979), Ind.App., 396 N.E.2d 918, 920.

*Id.* at 168. In the case before us, Weger does not claim Dealer negligently entrusted the vehicle to Lawrence and Weger has not presented sufficient evidence to establish a factual question regarding a principal/agent or master/servant relationship.

er's representatives to go to the repair shop and retrieve the Cordoba for him. Finally, Weger offers no authority to support his position that Lawrence's use of the interim registration plate rendered Lawrence the Dealer's agent. In fact, the existence of the interim registration plate is proof of the sale. As we noted in footnote two, I.C. § 9–10–2–10 provides that a dealer may furnish a buyer with an interim registration plate only after the sale has occurred. Additionally, the statute authorizes the *"owner* to operate that vehicle for a maximum period of twenty-one (21) days after the date of delivery of that vehicle to its *owner ..."* (emphasis supplied).

Here, Dealer presented evidence at the summary judgment proceeding that the sales transaction had been completed and no agency relationship existed at the time of the accident. In addition, I.C. § 9–4–1–11(d), *supra,* provides that Lawrence, as a conditional buyer, owned the vehicle. Once the Dealer established that no genuine factual issue existed, Weger could not rest on the mere allegations or denials of his pleadings, but had to set forth specific facts showing there was a genuine issue for trial. *Hinkle, supra.* Since Weger failed to do this, summary judgment in favor of Dealer was appropriate. The trial court erred in failing to grant Dealer's motion for summary judgment.

### ISSUE II

■ Next, Weger asks this court to declare that the Financial Responsibility Act, I.C. § 9–1–4–3.5 imposes liability on Dealer for Weger's injuries as a matter of law. Weger asserts this Act codifies "the strong public policy that insurance be available to persons injured in automobile accidents". (Weger's brief, p. 14). Since Dealer allowed Lawrence to operate the Cordoba without liability insurance, Weger asserts Dealer must be liable for his injuries as a matter of law. I.C. § 9–1–4–3.5 provides:

9–1–4–3.5. *Proof of financial responsibility; rules; fees*

Sec. 3.5. (a) A motor vehicle may be registered in Indiana only if proof of financial responsibility in the amounts specified in I.C. 9–2–1–15 is produced for inspection at the time application for registration is made in a form required by the department.

(b) Financial responsibility, in one (1) of the forms prescribed by I.C. 9–2–1–16 or by self-insurance under I.C. 9–2–1–37, must be continuously maintained in at least the amounts specified in I.C. 9–2–1–15 as long as the motor vehicle is operated on roads, streets, or highways in Indiana. A person who operates a motor vehicle on a road, street, or highway in violation of this subsection commits a Class C misdemeanor.

(c) The commissioner may adopt rules under I.C. 4–22–2 to implement this section.

(d) Each license branch shall collect, in addition to any other fee permitted under this title, the service charge prescribed under I.C. 9–1.5 for each vehicle registration to cover the costs of administering this section.

First, this statute applies to individuals who desire to register their vehicles in Indiana, and it requires these individuals to furnish proof of financial responsibility. The statute makes no reference to dealers and in no way places responsibility upon the seller of a vehicle, whether it be a dealer or a private party, to insure that the buyer has proof of financial responsibility before selling the car. Second, Weger has not offered any case or statutory authority to this effect, nor can we find any. Even assuming Dealer was aware Lawrence had no insurance, in the absence of authority we decline to hold Dealer liable for Weger's injuries as a matter of law.

### ISSUE III

■ As a final matter, Weger argues Indiana's Primary Coverage Statute, IND. CODE § 27–8–9–6 *et seq.,* requires Dealer to bear the ultimate financial responsibility for his injuries.[7] Since Lawrence has no

---

7. In its reply brief, Dealer asserts this issue was not argued in the trial court and therefore, is

not available for review on appeal. We are unable to determine whether this issue was

insurance, Weger argues Dealer's "garage liability policy"[8] affords primary coverage in this matter. However, even if Dealer's insurance policy were primary under the provisions of this statute, the statute has no application in this personal injury action. As noted in *Huber v. Henley*, 669 F.Supp. 1474 (S.D.Ind.1987), this statute relates to claims made against insurance policies and governs the apportionment of damages among various insurance policies once a resolution of the underlying case has been reached.

For the foregoing reasons, the decision of the trial court is reversed and we remand this cause to the trial court to enter summary judgment in favor of Dealer.

CONOVER and ROBERTSON, JJ. concur.

---

presented to the trial court as the transcript of the summary judgment hearing is not included in the record on appeal. Since Dealer has failed to show this issue was *not* before the trial court, we will discuss it.

8. As used in this chapter "Garage liability policy" refers to any motor vehicle liability insurance policy that affords coverage to a named insured engaged in the business of selling motor vehicles. I.C. § 27–8–9–6.