CINCINNATI INSURANCE COMPANY,
a Delaware corporation,
Plaintiff–Appellant, Cross–Appellee,

v.

John MOEN, Mary Moen, Jeff Moen, William Holmes, Daniel Holmes, and Karen S. Holmes, Defendants–Appellees, Cross–Appellants,

and

Liberty Mutual Insurance Company,
Defendant–Appellee.

Nos. 90–1707, 90–1791 and 90–1914.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 9, 1991.
Decided Aug. 19, 1991.

Philip E. Kalamaros, argued, South Bend, Ind., for plaintiff-appellant, cross-appellee.

Anthony M. Zappia, Daniel H. Pfeifer, argued, Thomas D. Blackburn, Sweeney, Pfeifer & Blackburn, South Bend, Ind., R.T. Green, Sweeney, Pfeifer & Blackburn, Fort Wayne, Ind., for defendants-appellees, cross-appellants.

Before WOOD, JR., COFFEY and MANION, Circuit Judges.

MANION, Circuit Judge.

Eighteen-year-old Jeff Moen and his father John Moen purchased a 1957 Chevy on June 2, 1988. The plan was for father and son to spend some time together fixing up the classic car for Jeff to drive. After about two months of work, the car was nearly ready to go. Although it still lacked insurance and license plates, Jeff was anx-ious to show it off to a friend. On July 31, 1988, Jeff put the wheels on and picked up 15–year–old Daniel Holmes. Unfortunately, Jeff totalled the car and Holmes sustained serious injuries.

Cincinnati Insurance Company (Cincinnati) brought this declaratory judgment action in federal district court, arguing that it was not liable under John Moen's combination homeowners and automobile policy. The district court agreed that Cincinnati was not liable under the homeowners portion of the policy, and also that the '57 Chevy was not an automobile covered by the policy. *See Cincinnati Insurance Co. v. Moen,* 732 F.Supp. 949 (N.D.Ind.1990). Because it was not a covered auto, Holmes could not receive medical payments under the medical payment provisions of the policy. However, the court found liability coverage for Jeff Moen under the automobile portion of the homeowners policy because family members are automatically covered, and no exclusion applied. *Id.,* 732 F.Supp. at 954. Cincinnati appealed. The Moen family and Holmes, hoping to secure medical payment coverage for Holmes, cross-appealed the ruling that the car was not a covered auto under the policy.

The question before us in Cincinnati's appeal is the same one isolated by the district court—who owned the car? As we shall see from our discussion of the policy's terms, if John owned the '57 Chevy, since he failed to have it listed on the policy, it is not a covered auto and Cincinnati is not liable at all. On the other hand, if Jeff owned the car, as Cincinnati argues, the accident again is not covered because there is an exclusion for vehicles owned by other family members.

But the district court, obtaining guidance from a similar North Carolina Supreme Court case, ruled that neither John nor Jeff owned the car. Since Jeff was a family member covered by the policy, and no exclusion applied, the district court granted summary judgment to the defendants. Because we conclude that Jeff was the statutory owner of the '57 Chevy, we reverse and remand to the district court so summary judgment can be granted to Cincinna-

ti. We affirm the district court's ruling that the car was not a covered automobile under the policy.

## I.

The facts surrounding the Moens' purchase of the car are central to resolving the question of ownership. After seeing the car for sale, Jeff brought his father along to owner Mark Wallace's house to take a look at it. Over the course of the next two weeks John negotiated Wallace down from his initial asking price of $3,000 to a purchase price of $2,750. John said he handled the negotiations because he had more experience at it than his teenage son.

The Moens paid cash for the car. Jeff took $300 from his savings account and used it as a down payment about a week prior to purchasing the car. Jeff sold some personal property to produce another $450, and borrowed the remaining $2,000 from his father. John took out a personal loan for that $2,000 from AAA Credit Union. When they arrived at Wallace's house to pay for the car on June 2, John gave Jeff the $2,000 in cash so that Jeff could pay for the car. Wallace signed over the title and handed it to Jeff, who gave it to his father. Jeff drove the car home. The Moens did not fill in a name on the title, but John placed it in a safe in their home with other important family documents, including Jeff's savings bonds. The title listed a $500 sales price so the Moens could avoid paying sales tax on the full price of the vehicle. Wallace gave them a sales receipt that said the car was paid for in full, but John misplaced it. John stated that the original sales receipt did not list a purchaser. After the accident John obtained another receipt from Wallace, who wrote "I, Mark J. Wallace, received $2,750.00 for 1957 Chevy from Jeff Moen on June 2, 1988. Paid in full. Mark J. Wallace 6–2–88."

Before the accident, Jeff and his father set up a repayment plan for the borrowed $2,000. Jeff was to make monthly payments of $98 to his father until the loan was repaid. At the time of the accident he had made two payments of $100 each. Both payments were made one week early, because Jeff was anxious to get his car paid off. Both Moens stated that the car was to be exclusively for Jeff's use. Jeff was to pay for the gas, maintenance, title, license, and insurance costs.

The Moens had originally planned to have the car titled on the Monday following the accident, August 1, 1988. In their deposition statements, both Moens contradicted previous recorded statements regarding the name that would go on the title. In recorded conversations with Cincinnati agent Mason Boyd on Sept. 23, 1988, less than two months after the accident, both Moens stated that the car was to be titled in Jeff's name on August 1. In response to Boyd's question "Okay so the intent was to have his name on the title for the car then?", John Moen stated "Oh, yeah that was going to happen Monday ... *I wanted him to be able to have ... it in his name,* I wanted him to be able to own something of his own ..." (emphasis added). In response to Boyd's question "So the car was going to be titled in your name then?" Jeff Moen said "Yeah." But at their depositions on May 11, 1989, more than nine months after the accident, both Moens insisted that the car was to be titled in John's name.

## II.

The district court resolved the liability issue as a matter of law in response to cross motions for summary judgment. After receiving briefs from the parties, depositions of the principals, and hearing argument on the motions, the court concluded that "the matter is now ripe for ruling." 732 F.Supp. at 950. The court held that it could decide the case "as a matter of law" because the contract was unambiguous. 732 F.Supp. at 954. Thus, our review of the district court's decision is de novo. *Smart v. State Farm Insurance,* 868 F.2d 929, 931 (7th Cir.1989).

## III.

We look first to the relevant portions of the insurance contract between John Moen,

the named insured, and Cincinnati Insurance Company:

DEFINITIONS

\*    \*    \*    \*    \*    \*

"Family member" means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

\*    \*    \*    \*    \*    \*

"Your covered auto" means:

1. Any vehicle shown in the Declarations.

2. Any of the following types of vehicles on the date you become the owner:

    a. a private passenger auto; or

    b. a pickup, panel truck or van.

This provision applies only if:

    a. you acquire the vehicle during the policy period;

    b. you ask us to insure it during the policy period or within 30 days after you become the owner; and

    c. with respect to a pickup, panel truck or van, no other insurance policy provides coverage for that vehicle.

If the vehicle you acquire replaces one shown in the Declarations, it will have the same coverage as the vehicle it replaced. You must ask us to insure a replacement vehicle during the policy period or within 30 days only if:

    a. you wish to add or continue Coverage for Damage to Your Auto; or

    b. it is a pickup, panel truck or van used in any business or occupation, other than farming or ranching.

If the vehicle you acquire is in addition to any shown in the Declarations, it will have the broadest coverage we now provide for any vehicle shown in the Declarations.

3. Any trailer you own.

4. Any auto or trailer you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

    a. breakdown;

    b. repair;

    c. servicing;

    d. loss; or

    e. destruction.

## PART A—LIABILITY COVERAGE

*Insuring Agreements* We will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted.

"Covered person" as used in this Part means:

1. You or any family member for the ownership, maintenance or use of any auto (including a motorhome, truck, bus or motorcycle) or trailer.

2. Any person using your covered auto.

3. For your covered auto, any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

4. For any auto (including a motorhome, truck, bus or motorcycle) or trailer, other than your covered auto, any person or organization but only with respect to legal responsibility for acts or omissions of you or any family member for whom coverage is afforded under this Part. This provision applies only if the person or organization does not own or hire the auto or trailer.

\*    \*    \*    \*    \*    \*

*Exclusions*

\*    \*    \*    \*    \*    \*

B. We do not provide Liability Coverage for the ownership, maintenance or use of:

1. any motorized vehicle having less than four wheels (except for a motorcycle as owned, maintained or used by a covered person).

2. Any vehicle, other than your covered auto, which is:

   a. owned by you; or

   b. furnished or available for your regular use.

3. Any vehicle, other than your covered auto, which is:

   a. owned by any family member; or

   b. furnished or available for the regular use of any family member.

\* \* \* \* \* \*

PART B—MEDICAL PAYMENTS COVERAGE

*Insuring Agreement* We will pay reasonable expenses incurred for necessary medical (including surgical, x-ray and dental services: including prosthetic devices, eyeglasses and pharmaceuticals; including necessary ambulance, hospital and professional nursing services) and funeral services because of bodily injury:

1. Caused by accident; and

2. Sustained by a covered person.

We will pay only those expenses incurred within 3 years from the date of the accident.

"Covered person" as used in this Part means:

1. You or any family member:

   a. while occupying; or

   b. as a pedestrian when struck by;

   a motor vehicle designed for use mainly on public [streets] or a trailer of any type,

2. Any other person while occupying your covered auto.

The district court correctly found that Jeff Moen was a "covered person" under the policy because he was a family member. But Cincinnati argues that policy exclusion B(3)(a), which precludes liability coverage for "[a]ny vehicle, other than your covered auto, which is ... owned by any family member," applies and relieves Cincinnati of liability.

Indiana law defines a motor vehicle owner in Indiana Code 9–1–1–2(*o*):

"Owner" means a person who holds the legal title of a motor vehicle or any person renting or leasing a vehicle and having exclusive use thereof for a period longer than thirty (30) days, or in the event a vehicle is the subject of an agreement for the conditional sale or lease vested in the conditional vendee or lessee, or in the event the mortgagor thereof, with the right of purchase upon the performance of the conditions stated in the agreement and with an immediate right of possession of a vehicle is entitled to possession, then such conditional vendee or lessee or mortgagor shall be deemed to be the owner for the purpose of this article.

The district court concluded that

Under this definition, neither Jeff nor John is the owner of the vehicle because neither held legal title to the 1957 Chevrolet. At the time of the accident, the legal title of the motor vehicle was in no one's name, the title being signed off in blank. Thus, no one would be the owner of the car.

732 F.Supp. at 953.

The district court went on to compare this case to *Jenkins v. Aetna Casualty and Surety Company,* 324 N.C. 394, 378 S.E.2d 773 (1989). In that case the North Carolina Supreme Court, construing an insurance policy and a definition of owner similar to those at issue in this case, found that a vehicle was not owned by its purchaser because he never obtained title pursuant to the statute.

■ The court in this case ended its analysis with the statement that "since neither Jeff nor John has title to the 1957 Chevrolet neither one of them is the owner." 732 F.Supp. at 954. However, the court curtailed its analysis prematurely. The court should have gone on to consider that part of the Indiana statute which allows someone without legal title to be deemed the owner if he is a conditional vendee, lessee or mortgagor and is entitled to possession of the vehicle. We conclude that Jeff is the statutory owner of the '57 Chevy because he had an immediate right of possession, he paid for the car's down payment from his own funds, and was in

the process of repaying the money he borrowed to complete the purchase.

In reaching this conclusion, we draw guidance from a decision of the Indiana Court of Appeals in *Ellis v. Weger*, 550 N.E.2d 1347 (Ind.App.1990). In construing the nearly identical definition of owner contained in I.C. 9–4–1–11(d),[1] the *Ellis* court held that even though the seller of a car retained legal title, the statutory owner was actually the buyer who traded in another car as a down payment, took possession of the car, and agreed to make twice-monthly $50 payments until the balance was paid. Similarly, in *Royal Indemnity Insurance Co. v. Shue*, 134 Ind.App. 322, 182 N.E.2d 796 (1962), a car buyer made a down payment, took possession of the vehicle, and agreed to make monthly payments to the car dealer on the remaining debt. The buyer was ruled the owner even though he did not possess a certificate of title, because the car dealer had not yet obtained the title from the car's previous owner.

In our case, the certificate of title was transferred to John and Jeff, but no name was filled in. However, the uncontroverted evidence is that this was to be Jeff's car. As in *Ellis* and *Royal Indemnity*, he had an immediate right of possession, he made the down payment from his own funds, and he was repaying his father John, the lienholder,[2] for the money borrowed to purchase the automobile.

As the district court in our case recognized, John is not the owner even though he is a lienholder. 732 F.Supp. at 954. In *National Bank & Trust Company of South Bend v. United States*, 589 F.2d 1298, 1302 (7th Cir.1978), we rejected the assertion that a bank's interest as lienholder made it the owner of a vehicle under I.C.

9–1–1–2(*o*). But John is the lienholder because his son Jeff owes him money borrowed to pay for the car. The Indiana statute does not make an exception to this definition of owner just because the mortgagor is the son of the lienholder.

"[C]ertificates of title or registration of automobiles are *indicia* of their ownership and control, and, standing alone, [raise] an inference of legal title in the holder thereof, subject, of course, to contradiction of such fact under the ordinary rules of evidence." *Royal Indemnity*, 182 N.E.2d at 799, citing *Jones et al. v. Kilborn et al.*, 125 Ind.App. 88, 122 N.E.2d 739, 741 (1954). Here, the blank title raises no inference that anyone else owns the car. The evidence in this case, applying Indiana law, indicates that this car has an owner. The undisputed facts point to Jeff.

Jeff paid $750 of the purchase price from his savings account and the sale of some personal property. His father handed him the money to give to Wallace. Wallace handed Jeff the title and original receipt. Jeff drove the car home following the sale. The duplicate sales receipt obtained by his father listed Jeff as the purchaser. Jeff was to pay for the gas, maintenance, license plates, and insurance. Jeff had made the first two monthly repayments to his father for the loan. In describing the arrangement to Boyd in the recorded statement, John said "it was just straightforward ... it was gonna be his car and then he was going to pay me back and you know and a loan would be paid ...". Jeff's deposition statements indicate that he considered the car his own and told others at school it was his car.

We hold that Jeff Moen was the owner of the '57 Chevy. Therefore, policy exclu-

---

1. "A person who holds the legal title of a vehicle, or in the event a vehicle is the subject of an agreement for the conditional sale or lease thereof with the right of purchase upon performance of the conditions stated in the agreement and with an immediate right of possession vested in the conditional vendee or lessee, or in the event a mortgagor of a vehicle is entitled to possession, then such conditional vendee or lessee or mortgagor shall be deemed the owner for the purpose of this chapter."

2. In contradicting his previous recorded statement that Jeff's name was to be on the title, John indicated that he wanted the car in his name as a security interest on the loan to Jeff: "If [Jeff] didn't end up paying it all, at least the title was still in my name, too." (John's deposition at 17).

sion B(3)(a) applies to release Cincinnati from liability coverage for Jeff's accident. The Moens' alternative basis for affirming the district court, an argument that some ambiguity exists in the insurance policy's use of the words "auto," "any motorized vehicle," and "any vehicle," has no merit.

 On cross appeal, the Moens and Holmes appeal the district court's determination that the '57 Chevy was a "covered auto" under the policy. Of course, this argument hits an insurmountable barrier when one considers that, in order to be a "covered auto" under the policy, John Moen would have to be the vehicle's owner. We have just concluded that Jeff was the owner. Our conclusion that John was merely a lienholder is a proposition the Moens and Holmes agreed with on direct appeal. John was not the owner of the car, nor did he have an "ownership interest," whatever that is, sufficient to bring the car within his policy's coverage. Finally, even if John were the owner of the car, it was not a covered auto because, unlike several other cars that he added or deleted from coverage during this same period, he never notified Cincinnati that he wanted the '57 Chevy to be a covered auto. We reject the cross appeal, and affirm the district court's conclusion that the '57 Chevy was not a covered auto under the policy.

REVERSED IN PART,

AFFIRMED IN PART.